J-S06002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SARA POIST | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MARK POIST, | : | |
| | : | |
| Appellant | : | No. 1877 EDA 2018 |

Appeal from the Order Entered June 15, 2016
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2013-27844

| | | |
|---|---|---|
| SARA POIST | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MARK POIST, | : | |
| | : | |
| Appellant | : | No. 1879 EDA 2018 |

Appeal from the Order Entered February 5, 2018
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2013-27844

| | | |
|---|---|---|
| SARA POIST | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MARK POIST, | : | |
| | : | |
| Appellant | : | No. 1880 EDA 2018 |

Appeal from the Order Entered May 15, 2018
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2013-27844

| | | |
|---|---|---|
| SARA L. POIST | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |

J-S06002-19

<pre>
                                          :
          v.                              :
                                          :
                                          :
                                          :
   MARK E. POIST                          :
                                          :
              Appellant                   :     No. 2291 EDA 2018
</pre>

Appeal from the Order Entered June 18, 2018
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2013-27844,

BEFORE:  BOWES, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.                    **FILED OCTOBER 29, 2019**

In these consolidated appeals, Mark E. Poist ("Husband"), an attorney proceeding *pro se*, appeals from the May 15, 2018 equitable distribution order and divorce decree that ended his marriage to Sara L. Poist ("Wife") and resolved all outstanding economic claims.  Husband also purports to appeal two interlocutory rulings that occurred during June 2016 and February 2018, respectively, and a third post-divorce order in which the trial court denied Husband's motion to recuse.  We quash the interlocutory appeals filed at 1877 and 1879 EDA 2018,[1] dismiss the appeal filed at 2291, and affirm the May 2018 order and decree.

_____

[1] While we quash the appeals docketed at 1877 and 1879 EDA 2018, we confront the merits of Husband's challenges to those rulings in addressing the remaining appeal that is properly before this Court.  ***See Betz v. Pneumo Abex***, LLC, 44 A.3d 27, 54 (Pa. 2012) ("an appeal of a final order subsumes challenges to previous interlocutory decisions"); Pa.R.A.P. 341 note ("A party needs to file only a single notice of appeal to secure review of prior non-final orders that are made final by the entry of a final order[.]").

- 2 -

Husband and Wife married on August 29, 2009, and separated on July 15, 2013. No children were born of the marriage. Wife filed a divorce complaint on September 11, 2013. As it relates to an issue on appeal, Wife did not request in her complaint reasonable counsel fees as an equitable measure pursuant to § 3702(a) of the Divorce Code. Approximately two and one-half years later she filed an affidavit pursuant to § 3301(d) attesting that the parties have been separated for at least two years and that the marriage is irretrievably broken. Husband responded with a counter-affidavit disputing that the marriage was irretrievably broken. He subsequently requested the court to order the parties to attend marriage counseling. The trial court granted that entreaty, and directed the parties to attend three counseling sessions prior to the ensuing § 3301(d)(1)(ii) hearing to determine the status of the marriage. The parties complied, and following the evidentiary hearing on June 14, 2016, the trial court found that Wife satisfied both prerequisites for divorce under § 3301(d), *i.e.*, "that the parties have lived separate and apart for a period of at least two years and that the marriage is irretrievably broken." 23 Pa.C.S. § 3301(d)(1)(ii).[2] This determination is the genesis of Husband's interlocutory appeal that we docketed at 1877 EDA 2018.

---

[2] Effective December 5, 2016, the required period of living separate and apart was reduced to at least one year. 23 Pa.C.S. § 3301 Historical and Statutory Notes.

The trial court directed that the parties argue their economic issues before a divorce master, who filed his report and recommendation on September 20, 2017. The master recommended an equal split of the marital estate totaling $54,169.41, with Wife transferring to Husband $11,840.30 from her pension via a qualified domestic relations order ("QDRO"). While Wife presented additional evidence regarding her counsel fees totaling $15,000, and the master stated an inclination to grant the fees accrued in response to Husband's obdurate and vexatious conduct, it ultimately declined to award counsel fees because Wife did not request them in her divorce complaint. *See* Master's Report, 8/31/17, 5-6.

Husband filed timely exceptions to the master's report and demanded a *de novo* hearing to determine the equitable distribution of marital property. Thereafter, he filed a motion to compel discovery of a litany of documents that he asserted he was entitled to review. Wife responded, and the trial court disposed of Husband's motion on the record in open court on February 2, 2018. Three days later, the court entered an order stating, "The hearing of February 2, 2018, has been dispositive of **ALL** discovery issues/discovery requests with respect to the equitable distribution hearing[.]" Order, 2/5/18. This order is the origin of Husband's interlocutory appeal docketed at 1879 EDA 2018.

On March 8, 2018, Husband filed a motion in *limine* seeking to preclude Wife from offering testimony or exhibits at trial that reference issues that had

not been raised in her divorce complaint, including, *inter alia*, her counsel fees and expenses. The trial court did not immediately rule on the motion, but prior to the May 15, 2018 *de novo* equitable distribution trial, it granted the motion in part. The court precluded Wife from presenting "testimony and exhibits related to [her] request for counsel fees and expenses pursuant to [the equitable considerations in] Section 3702 of the Divorce Code [but it permitted] testimony and exhibits related to counsel fees and expenses . . . pursuant to 42 Pa.C.S.A. § 2503(7)," which relates to the award of counsel fees as a sanction for dilatory, obdurate, or vexatious conduct. Trial Court Order, 5/15/18, at 3-4.

Following the trial, on May 15, 2018, the trial court entered the "Equitable Distribution Order and Divorce Decree" that represents the final, appealable order in this litigation, and Husband filed a timely notice of appeal.[3] He presents nine questions for our review:

_____

[3] On May 25, 2018, following the entry of the divorce decree order but prior to the filing of the notice of appeal on June 14, 2018, Husband filed in the trial court a motion for recusal, which the trial court denied on June 18, 2018. That appeal, which is listed on our docketed at 2291 EDA 2018, is not justiciable. Stated plainly, the issue concerning the trial judge's recusal is either moot because it relates to the now-resolved divorce proceedings, or to the extent that Husband anticipates some undisclosed post-decree proceeding before the trial judge, the claim is premature. *See Warmkessel v. Heffner*, 17 A .3d 408, 412 (Pa.Super.2011) ("As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot.") If necessary, Husband can file a recusal motion in any future proceeding where he is before the trial judge. Hence, whether we dismiss that appeal as moot or as not ripe for review, the current procedural posture does not permit this Court to address the merits of this appeal.

- 5 -

1. Did the trial court err by making findings of facts not supported by competent or adequate evidence and/or predicated on errors of law when applying the factors required by 23 Pa.C.S. § 3502 to divide the marital estate in an equitable manner?

2. Did the trial court err by failing to properly apply the factors required by 23 Pa.C.S. § 3502 to divide the marital estate in an equitable manner and to give a reasoned explanation for that division, as required by 23 Pa.C.S. § 3506?

3. Did the trial court err by failing to give any consideration in the equitable distribution process to [Husband's] evidence of [Wife's] student loans and car loans, acquired prior to the marriage, but paid off during the marriage and prior to the parties' separation?

4. Did the trial court err by failing to give any consideration to the parties' refund/liability regarding the filing of 2013 taxes?

5. Did the trial court err by failing to give any consideration to checks written out by [Wife] around and after the date of separation from the parties' joint checking account, or to monies withdrawn by [Wife] from the joint account after [Wife] unilaterally withdrew approximately half (1/2) the monies in September 2013, but continued to withdraw from [Husband's] remaining amount?

6. Did the trial court abuse its discretion and err as a matter of law in awarding attorneys' fees *sua sponte* upon a finding of dilatory, obdurate, and vexatious conduct by [Husband]?

7. Did the trial court err and commit reversible error when it did not grant a continuance prior to the irretrievable breakdown hearing on June 14, 2016?

8. Did the trial court err and commit reversible error when it refused to require [Wife] to answer, and properly object, to discovery pursuant to the Pennsylvania Rules of Civil Procedure and other applicable local rules?

9. Did the trial court err as a matter of law and its discretion in failing to recuse itself from this matter?

Husband's brief at 9-10. Wife neglected to file a brief.

Husband's first five issues assail the trial courts' equitable distribution order. The following principles guide our review of these claims:

> Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.
>
> ***Smith v. Smith***, 904 A.2d 15, 18 (Pa.Super. 2006) (quoting ***McCoy v. McCoy***, 888 A.2d 906, 908 (Pa.Super. 2005)). As we previously observed, in the context of an equitable distribution of marital property, a trial court has the authority to divide the award as the equities presented in the particular case may require. ***Mercatell***, 854 A.2d at 611. "In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." ***Morgante v. Morgante***, 119 A.3d 382, 387 (Pa.Super. 2015) (quoting ***Biese v. Biese***, 979 A.2d 892, 895 (Pa.Super. 2009)).

***Cook v. Cook***, 186 A.3d 1015, 1025–26 (Pa.Super. 2018).

Issues one and two challenge the trial court's consideration of the statutory factors outlined in 23 Pa.C.S. § 3502[4] in dividing the marital estate.

---

[4] Pursuant to the Divorce Code, the following factors are relevant to the equitable division of marital property:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

- 7 -

Specifically, he argues that the trial court attributed improper weight to factors three, four, seven, eight, and ten, and he asserts that the court failed to explain the reasons for its decision. Husband's brief at 34. Similarly, Husband's next three issues relate to the weight of the evidence that the trial

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S. § 3502(a).

court attributed to his evidence regarding Wife's premarital student loan debt, the parties' tax liability for 2013, and Wife's post-separation withdrawals from the marital bank account. None of these five contentions merits relief.

First, the certified record belies Husband's assertions that the trial court improperly applied the equitable distribution factors or failed to disclose the reasons for its determination. Indeed, the trial court's equitable distribution order and divorce decree set forth all of the relevant facts, compiled an inventory of the marital assets, addressed every applicable statutory factor, and explained the court's rationale in detail. **See** Equitable Distribution Order and Divorce Decree, 5/15/18, at 1-9.

Moreover, absent deficiencies in the certified record, we may not re-weigh the evidence in Husband's favor and apply the statutory factors anew. **Brubaker v. Brubaker**, 201 A.3d 180, 184 (Pa.Super. 2018) ("it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence."). Herein, the record sustains the trial court's equitable distribution of the marital estate, including the manner in which the court equitably resolved the payment of Wife's premarital loans with marital funds, Wife's alleged appropriation of $9,000 from a joint savings account, and the parties' respective tax liability for 2013. **See** Equitable Distribution Order and Divorce Decree, 5/15/18, at 2-3, 16, 17. Accordingly, we will not disturb it. **Brubaker**, **supra** at 184.

Husband's last three issues relate to Wife's award of attorneys' fees for Husband's dilatory, obdurate, and vexatious conduct, the trial court's denial of Husband's request for a continuance prior to the June 2016 evidentiary hearing to determine the status of the marriage, and the court's alleged indifference to Husband's discovery requests.

As it relates to Husband's dispute of the counsel fees, we note that the trial court imposed counsel fees pursuant to 42 Pa.C.S. § 2503, which provides as follows:

> The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:
>
> . . . .
>
> (7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.

42 Pa.C.S. § 2503(7).

Concerning the two remaining arguments, this Court reviews both the propriety of a discovery order and the denial of a continuance request for an abuse of discretion. *Gallo v. Conemaugh Health Sys., Inc.*, 114 A.3d 855, 860 (Pa.Super. 2015); *In the Interest of D.F.*, 165 A.3d 960, 965 (Pa.Super. 2017). As we recently reiterated, "[a]n abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias, or

- 10 -

ill-will." *Id*. (quoting *In re J.K.*, 825 A.2d 1277, 1280 (Pa. Super. 2003)) (cleaned up).

Upon our thorough review of the record, we agree with the discussion of these issues that Judge Rhonda Lee Daniele presented in her Equitable Distribution Order and Divorce Decree filed on May 14, 2018, and we adopt the court's comprehensive rationale as our own. *See* Equitable Distribution Order and Divorce Decree, 5/15/18, at 9-16.

Order affirmed. Appeals docketed at 1877 and 1879 EDA 2018 quashed. Appeal docketed at 2291 EDA 2018 dismissed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/19

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

SARA L. POIST[1]                                        :        NO. 13-27844
                                                       :
        v.                                             :
                                                       :
MARK E. POIST                                          :

### EQUITABLE DISTRIBUTION ORDER AND DIVORCE DECREE

Defendant-Husband's Equitable Distribution Exceptions, which he filed on September 20, 2017

are before the Court. Following a hearing on March 12, 2018, we now issue this Equitable Distribution

Order and Divorce Decree.

### FINDINGS OF FACT

The parties were married on August 29, 2009, and they separated on July 15, 2013. Plaintiff-

Wife filed her Divorce Complaint on September 11, 2013. Plaintiff-Wife reinstated the Divorce

Complaint on October 31, 2013, and the Reinstated Complaint was served upon Defendant-Husband in a

timely manner. Plaintiff-Wife's Divorce Complaint included a request for equitable distribution.

On January 28, 2014, Defendant-Husband filed an Answer and Counterclaim to the Divorce

Complaint. In his Counterclaim, Defendant-Husband included a request for equitable distribution.

Plaintiff-Wife received her undergraduate degree from West Chester University and a master's

degree from the University of Pennsylvania. Plaintiff-Wife had completed her education prior to the date

of marriage.

Plaintiff-Wife is a social worker. From 2006-2009, Plaintiff-Wife worked for Horizon Health. In

June of 2009, she became an employee of Eagleville Hospital. Plaintiff-Wife's current job title at

Eagleville Hospital is program manager of an adult psychiatric unit/social worker.

Plaintiff-Wife's biweekly gross pay in 2018 is $2,692, which equates to a gross salary of

$69,992/year.

Plaintiff-Wife currently resides in an apartment in King of Prussia, Pennsylvania.

Defendant-Husband received an undergraduate degree from Loyola University Maryland and a

law degree from Loyola University New Orleans College of Law (Class of 2008).

---

[1] On February 22, 2018, Plaintiff-Wife filed Notice to Retake Prior Surname, which is Sara L. Dodge.

Following law school, Defendant-Husband worked as a law clerk in Berks County for Judge John Boccabella. Thereafter, Defendant-Husband worked for a couple of law firms for a brief period. From July of 2012 until January of 2017, Defendant-Husband worked as an attorney for the law firm O'Brien, Belland & Bushinsky, LLC.

In January of 2017, Defendant-Husband began employment as an attorney with the City of Philadelphia Law Department's tax division.

Defendant-Husband resides in Philadelphia (1112 Kent Lane) with his girlfriend and their infant child. Defendant-Husband's girlfriend is employed as a certified nursing assistant. In April of 2017, Defendant-Husband's parents purchased the Philadelphia residence in which Defendant-Husband resides. Defendant-Husband's parents reside in Key West, Florida. Defendant-Husband pays rent to his parents, but Defendant-Husband and his parents have not executed a lease agreement.

Defendant-Husband's parents purchased the Philadelphia residence using approximately $61,288 as a down payment. This down payment was withdrawn from a Filbrandt & Company ("Filbrandt") account owned jointly by Defendant-Husband and his mother.

Defendant-Husband could not purchase the Philadelphia residence in his own name because Plaintiff-Wife did not agree to sign the paperwork required for Defendant-Husband to purchase the house by himself. We find that the $61,288 withdrawn from the Filbrandt account is Defendant-Husband's money. Defendant-Husband testified that he would have had the house placed in his name alone had Plaintiff-Wife signed a necessary waiver that she would not assert any interest in said house.

Defendant-Husband had a power of attorney for his parents with respect to signing all the required documents to purchase the Kent Lane residence. Despite the fact that Defendant-Husband's parents are the deed holders of the Kent Lane property, it is clear to the Court that Defendant-Husband is the real owner of the property. The Court would not be surprised if Defendant-Husband transfers the property to his name within a short time after the entry of the Divorce Decree in this action.

It is also clear to the Court that the Filbrandt account, though titled jointly in the names of Defendant-Husband and his mother, is Defendant-Husband's property alone. The entirety of the $61,288 down payment on the Kent Lane property was withdrawn from this account.

2

Defendant-Husband claims on his pre-trial inventory statement (Exhibit H-46), which is dated May 4, 2017, that the Filbrandt account is a premarital asset, but he failed to produce any evidence as to its value at the time of marriage or date of separation. **Therefore, the Court has NO information as to what portion of this account is marital property.** As of January 31, 2018, the balance in the Filbrandt account was $16,104. *See* Exhibit W-L.

Defendant-Husband's failure to produce any evidence of the Filbrandt account's balance at the time of marriage or date of separation has precluded the Court from determining the portion of this account that constitutes marital property.

Defendant-Husband's biweekly gross pay with the City of Philadelphia Law Department (as reflected in a 2018 paystub) is $2,697.00, which equates to a gross salary of $70,122/year.

Defendant-Husband's conduct during the litigation of this divorce case has been dilatory, obdurate, and vexatious. As a result of such conduct, we will award Plaintiff-Wife attorney's fees.

We specifically find that Plaintiff-Wife provided Defendant-Husband with the appropriate discovery responses on more than one occasion.

Martin Mullaney, Esquire, has represented Plaintiff-Wife for the entirety of this action, commencing with the filing of the Divorce Complaint. We find that Mr. Mullaney's rate of $385/hour in this matter is reasonable given Mr. Mullaney's experience and the range of fees in this geographic area for domestic litigation.

Defendant-Husband stated to Mr. Mullaney approximately one (1) week prior to the equitable distribution hearing of March 12, 2018, that he would agree to a withdrawal of the divorce action so the parties could remain married.

Following the parties' physical separation on July 15, 2013, the parties continued to use their joint Susquehanna Bank savings and checking accounts. On or about September 10, 2013, Plaintiff-Wife: (1) withdrew $1,000 from the parties' joint savings account and deposited this amount into the joint checking account to pay for marital expenses and (2) withdrew $9,000 from the joint savings account and deposited said amount into a newly opened account titled in her name only. The remaining balance of the joint savings account, $8,738.96, was left in the account for Defendant-Husband's use.

3

Since Plaintiff-Wife withdrew $9,000 from the joint savings account when the balance of the account was $17,738.96 and deposited said amount into her own account, we will direct that Defendant-Husband receive $130.00 in order to equally divide the parties' joint savings account.

Following the parties' separation, their Susquehanna Bank joint savings and checking accounts became BB&T accounts. Defendant-Husband has refused to agree to permit Plaintiff-Wife's name to be removed from these BB&T accounts.

During the marriage, the remaining loan balance on Plaintiff-Wife's 2008 Honda CR-V, which was $16,876.28, was paid from the joint checking account. The parties also used the joint checking account during their marriage to pay the balance of Plaintiff-Wife's student loan (sequence #3) in the amount of $2,874.93.

During the parties' marriage, Plaintiff-Wife's salary exceeded that of Defendant-Husband. For example, in 2009 (the year the parties married), Plaintiff-Wife's wages accounted for 64.5% of the parties' joint wages. We find that Plaintiff-Wife contributed more to the marital expenses than Defendant-Husband. Furthermore, appreciation and contributions to Plaintiff-Wife's non-marital property account for the majority of the parties' marital assets.

The evidence presented indicates that Plaintiff-Wife's earnings have exceeded Defendant-Husband's earnings from the date of marriage through 2017. However, a review of the parties' 2018 paystubs reveals that Defendant-Husband's anticipated gross earnings this year will exceed Plaintiff-Wife's gross earnings by $130.

Furthermore, we find that Defendant-Husband has a greater earning capacity than Plaintiff-Wife given his law degree and the rate at which his salary has increased over the years.

The chart that follows shows each party's Medicare wages for 2009 (during the marriage) and 2013-2017. We compiled the chart from information provided in Exhibits H-14 through H-19 & H-40 through H-44.

| Year | Plaintiff-Wife | Defendant-Husband |
|------|----------------|-------------------|
| 2009 | $52,297 | $28,725 |

4

| 2013 | $53,963 | $50,357 |
|------|---------|---------|
| 2014 | $51,819 | $49,233 |
| 2015 | $62,532 | $49,292 |
| 2016 | $66,843 | $58,514 |
| 2017 | $68,506 | $64,896 |

Defendant-Wife owns a 2008 Honda CR-V, which has about 145,000 miles on it. No testimony was presented regarding its current value. This is a premarital asset. No testimony was presented regarding a vehicle of Plaintiff-Husband.

The assets of the parties are set forth in the following chart.

| Asset | Title Holder | Total Value | Marital Portion | N/M Portion |
|-------|-------------|-------------|-----------------|-------------|
| 403(b) Mass Mutual | Wife | $90,867.24 | $42,870.31 | $47,996.93 |
| Roth IRA #1 | Wife | $37,772.34 | $13,973.37 | $23,798.97 |
| Roth IRA #2 | Wife | $8,620.92 | $512.89 | $8,108.03 |
| Rollover IRA | Wife | $14,966.03 | $4,047.58 | $10,918.45 |
| Vanguard Money Market | Wife | $1,256.13 | (2,964.93) | $1,256.13 |
| Rollover IRA | Husband | $10,241.40 | $9,019.60 | $1,221.80 |
| OBBB 401(k) | Husband | $28,010.61 | $430.64 | $27,579.97 |
| Filbrandt & Co. account | Husband & his mother | $16,104.00 | **Unknown/Not provided** | **Unknown/Not provided**. We will attribute the full balance of $16,104.00 to Husband's non-marital property. |
| Equity in 1112 Kent Lane, Philadelphia, PA | Husband's parents | $61,288.00 | **Unknown/Not provided** | **Unknown/Not provided**. We will attribute the full balance of $61,288.00 to Husband's non-marital property. |
| H's total non-marital | | | | $106,193.77 |
| W's total non-marital | | | | $92,078.51 |
| | | | | |

5

In light of Defendant-Husband's failure to produce documentary evidence as to the value of the Filbrandt account as of the date of marriage or date of separation, the Court could not ascertain the true value of the parties' marital assets.

The **marital** assets as set forth in the chart above total **$67,889.46**. Of this amount, $58,439.22 [86%] is from assets titled in Plaintiff-Wife's name, and $9,450.24 [14%] is from assets titled in Defendant-Husband's name.

There are no marital debts.

## DISCUSSION

### I. Equitable Distribution Factors

(1) The length of the marriage.

The parties were married for approximately 47 months prior to their separation on July 15, 2013.

(2) Any prior marriage of either party.

The Court does not recall any specific evidence as to this factor, but it is believed that this marriage was the first marriage for each party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of the parties.

Plaintiff-Wife is 36 years old and in good health; Defendant-Husband is 35 years old and in good health.

Each party's gross annual salary is approximately $70,000. Both parties are highly educated with graduate degrees. Plaintiff-Wife has a master's degree, and Defendant-Husband has a law degree. Each party is highly employable.

Given that Defendant-Husband has a law degree, we find that he has a greater earning capacity than Plaintiff-Wife. In fact, Defendant-Husband has the potential to earn much more than Plaintiff-Wife into the future.

It is not believed that either party has any liabilities. It is believed that each party's needs are modest, and each party is capable of fully supporting herself/himself. No evidence was presented regarding any unusual needs of either party.

(4) The contribution by one party to the education, training, or increased earning power of the other party.

N/A

(5) The opportunity of each party for future acquisitions of capital assets and income.

Given the young age of the parties and their advanced educations, each party has ample opportunity for future acquisitions of capital assets and income. However, given that Defendant-Husband has a law degree and is a practicing attorney, we believe that he has a greater opportunity to acquire capital assets and income. He certainly has the ability to earn a much greater income than Plaintiff-Wife.

(6) The sources of income of both parties, including but not limited to, medical, retirement, insurance, or other benefits.

Each party's main source of income is her/his employment.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation, or appreciation of the marital property, including the contribution of a party as a homemaker.

This is an important factor in that an increase in value to Plaintiff-Wife's non-marital property (through appreciation and contributions) accounts for the majority of the parties' marital assets.

If Defendant-Husband had not delayed this case by prolonging litigation, then we would have been more inclined to divide the marital assets in a 50:50 proportion. However, given the length of time that has passed since the parties' date of separation, we believe that it would be inequitable to award Defendant-Husband an equal share of the marital assets. We emphasize that Defendant-Husband has reaped the benefit of delaying this case in that the post-separation interest on the marital property has appreciated with time.

Furthermore, we believe it is more equitable to award Plaintiff-Wife a larger percentage of the marital property because a majority of the marital property is attributable to her.

We cannot overlook the fact that Defendant-Husband failed to produce evidence as to the value of the Filbrandt account at the date of marriage or the date of the parties' separation. We have no means of ascertaining the portion of the Filbrandt account that is marital property. Thus, we will create an adverse inference against Defendant-Husband for his failure to produce evidence concerning the Filbrandt

7

account at relevant dates and direct that the marital assets be split in a 65%/35% proportion in favor of Plaintiff-Wife.

The only Filbrandt account statement presented by Defendant-Husband is for the month ending December 31, 2017. *See* Exhibit H-32. That statement shows a balance of $11,122.00.

Plaintiff-Wife produced Filbrandt account statements for the months of March 2017 through January 2018. *See* Exhibit W-L. The balance of the account at the end of March 2017 was $69,267.00. The balance of the account at the end of April 2017, following a withdrawal of $61,288 for a down payment on the Kent Lane property, was $7,737.00. The balance as of January 31, 2018, was $16,104.00.

Each party contributed to the acquisition of marital property through her/his employment. Neither party dissipated the marital property.

(8) The value of the property set apart to each party.

Plaintiff-Wife's non-marital assets are worth approximately $92,078.51.

Defendant-Husband has accumulated about $61,288 in equity in the house in which he resides. The balance of Defendant-Husband's Filbrandt account as of January 31, 2018, was approximately $16,104. The total value of Defendant-Husband's non-marital assets is approximately $106,193.77.

(9) The standard of living established during the marriage.

We believe that the parties had a modest, yet comfortable, standard of living during their marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

The parties are situated fairly similarly at the present time. Their incomes are nearly equal. However, Defendant-Husband's income has increased at a greater rate than that of Plaintiff-Wife. For instance, Plaintiff-Wife's income and Defendant-Husband's income in 2009 (the year they married) was $52,297 and $28,725, respectively. Plaintiff-Wife's income and Defendant-Husband's income in 2017 was $68,506 and $64,896, respectively. This shows that Defendant-Husband's income has more than doubled since 2009 while Plaintiff-Wife's income has increased at a much lower rate.

8

We believe that Plaintiff-Wife's income has leveled off, and we do not anticipate her income growing at a large rate into the future. However, Defendant-Husband has the ability to increase his income exponentially given his law degree and legal experience.

Defendant-Husband's non-marital assets exceed Plaintiff-Wife's non-marital assets by about $14,000.00.

Defendant-Husband has equity in the house in which he resides as well as modest retirement assets. Plaintiff-Wife has retirement assets that exceed those of Defendant-Husband.

(10.1) The Federal, State, and local tax ramifications associated with each asset to be divided, distributed, or assigned, which ramifications need not be immediate or certain.

The division of the marital estate should not result in any tax ramifications.

(10.2) The expense of sale, transfer, or liquidation associated with a particular asset, which expense need not be immediate and certain.

There should not be significant expense in dividing the marital estate.

(11) Whether the party will be serving as the custodian of any dependent minor children.

The parties do not have any children together.

## II. Award of Attorney's Fees[2]

Pursuant to 42 Pa.C.S.A. §2503(7), we are awarding Plaintiff-Wife attorney's fees as a result of Defendant-Husband's dilatory, obdurate, and vexatious conduct during the litigation of this case.

Subsection 2503(7) of the Judicial Code permits an award of counsel fees as a sanction for dilatory, obdurate, or vexatious conduct during the pendency of a matter. There is authority for a trial court's *sua sponte* award of counsel fees based on a party's dilatory, obdurate, or vexatious conduct. *See*, *Kulp v. Hrivnak*, 765 A.2d 796 (Pa. Super. 2000).

The following demonstrates Defendant-Husband's dilatory, obdurate, and vexatious conduct.

A. Hearing regarding Defendant-Husband's counter-affidavit to Plaintiff-Wife's 3301(d) affidavit

---

[2] On March 8, 2018, Defendant-Husband filed a Motion in *Limine* in which he sought to preclude Plaintiff-Wife from offering into evidence any testimony or exhibits unrelated to the claims set forth by Plaintiff-Wife in her Divorce Complaint filed on September 11, 2013.
Defendant-Husband filed his Motion in *Limine* in response to Plaintiff-Wife's filing of an Amended Divorce Complaint on October 6, 2017, which added a request for counsel fees and expenses.
We will address Defendant-Husband's Motion in *Limine* in a separate Order.

9

On February 29, 2016, Defendant-Husband filed a counter-affidavit to Plaintiff-Wife's 3301(d) affidavit. *See* docket entry no. 13. In his counter-affidavit, Defendant-Husband alleged that the parties' marriage was not irretrievably broken.

On April 13, 2016, the undersigned conducted a phone conference with Defendant-Husband and Plaintiff-Wife's counsel for the purpose of scheduling an evidentiary hearing regarding Defendant-Husband's counter-affidavit to Plaintiff-Wife's 3301(d) affidavit. During the phone conference, Defendant-Husband requested the Court to direct the parties to attend three (3) marriage counseling sessions. **This was the first request for marriage counseling that Defendant-Husband had made of the Court.**

By Order dated April 13, 2016, we scheduled an evidentiary hearing regarding Defendant-Husband's counter-affidavit on June 14, 2016. We also directed the parties to attend three (3) marriage counseling sessions before said hearing.

Section 3302(c) of the Divorce Code provides that whenever the court orders a continuation period as provided for irretrievable breakdown in section 3301(d)(2), the court shall require up to a maximum of three counseling sessions within the time period where either party requests it.

At the time that Plaintiff-Wife filed her 3301(d) affidavit, section 3301(d)(2)[3] of the Divorce Code provided that the court may grant a divorce based on irretrievable breakdown where, after hearing, the court determines that the parties have lived separate and apart for a period of at least two (2) years and that the marriage is irretrievably broken.

Thus, it is clear from sections 3301 and 3302 of the Divorce Code that, where the ground for divorce is irretrievable breakdown of the marriage and the required period of separation, the Court is only required to direct the parties to attend counseling when it determines, following a hearing, that there is a reasonable prospect of reconciliation.

---

[3] Effective December 5, 2016, this statute was amended to permit a divorce based on irretrievable breakdown when the parties had been separated for **at least one (1) year**. That amendment does not apply to the instant case such that Plaintiff-Wife and Defendant-Husband had to have been separated at least two (2) years for the Court to grant a divorce based on irretrievable breakdown of the marriage.

Here, following a hearing on June 14, 2016, we determined that: (1) the parties had lived separate and apart for a period in excess of two (2) years and (2) the parties' marriage was irretrievably broken.

Therefore, we need not have directed counseling in this case, but we erred on the side of caution in so directing.

As the transcript for the hearing of June 14, 2016 reveals, there is no question that the parties' marriage was irretrievably broken at the time Plaintiff-Wife filed her 3301(d) affidavit. The parties had no meaningful communication after Plaintiff-Wife filed her Divorce Complaint on September 11, 2013. Their conversations concerned updates regarding their shared dog. Plaintiff-Wife's testimony, which we find credible, was that she did not initiate discussions regarding any other matters with Defendant-Husband.

Following the parties' physical separation, they did not socialize together or visit relatives of each other. The fact that **more than 28 months had elapsed** between Plaintiff-Wife's filing of the Divorce Complaint and her filing of a 3301(d) affidavit on February 8, 2016 (during which period Defendant-Husband did not request an order for counseling) supports our finding on June 14, 2016, that the marriage was irretrievably broken. It was **blatantly obvious** that this marriage was irretrievably broken.

We find Defendant-Husband's filing of a counter-affidavit to be dilatory, obdurate, and vexatious because, according to any reasonable person, this marriage was clearly irretrievably broken at the time that Plaintiff-Wife filed her 3301(d) affidavit on February 8, 2016.

Despite the fact that the Court was not required to direct the parties to attend counseling in this particular case as discussed above, we find it egregious that Defendant-Husband did not request counseling prior to the phone conference on April 13, 2016.

### B. Defendant-Husband's request for continuance of the hearing of June 14, 2016

At the start of the hearing on June 14, 2016, the Court addressed a continuance request that Defendant-Husband had faxed to the Court at 6:46 p.m. on June 9, 2016[4].

---

[4] A copy of Defendant-Husband's faxed continuance request is attached to his Motion for Reconsideration and marked Exhibit "D". *See* docket entry no. 25.

11

One reason for Defendant-Husband's continuance request was his allegation that Plaintiff-Wife had served incomplete discovery responses upon him. Again, we reiterate that any reasonable person would know that this marriage was irretrievably broken so seeking discovery on that issue was a futile exercise.

Furthermore, many of Defendant-Husband's interrogatories regarding whether the marriage was irretrievably broken were irrelevant to that issue. *See* Defendant-Husband's First Set of Interrogatories, Exhibit H-54. In particular, *see* Interrogatories 14-22, 30. The information sought in those interrogatories includes any sexual contact Plaintiff-Wife had with anyone other than Defendant-Husband since date of marriage, any gifts received by Plaintiff-Wife from an unrelated adult male from the date of marriage, any gift Plaintiff-Wife had given to an unrelated adult male from the date of marriage, and any communications with an unrelated adult male which are sexually explicit in nature.

It is clear these interrogatories are irrelevant to Defendant-Husband's allegation that the marriage was not irretrievably broken. Rather, the information sought only further demonstrates that the marriage is irretrievably broken.

Defendant-Husband also sought a continuance of the June 14, 2016, hearing based on his allegation that he had yet to receive documents pursuant to a subpoena served upon Well-Mind Therapy, which had counseled the parties prior to their separation. (N.T., 6/14/16, p. 7). We note that Defendant-Husband did not serve this subpoena upon Well-Mind Therapy until June 8, 2016. *See* docket entry no. 19. Thus, **Defendant-Husband served said subpoena only 6 days prior to the hearing date.** Defendant-Husband had ample time to seek discovery as our **Scheduling Order was dated April 13, 2016.** Furthermore, the information sought was clearly irrelevant to the issue before the Court.

The examples cited above further demonstrate Defendant-Husband's dilatory, obdurate, and vexatious conduct.

### C. Defendant-Husband's Motion for Reconsideration

On July 14, 2016, Defendant-Husband filed a Motion for Reconsideration of the Order dated June 14, 2016, that found that: (1) the parties had lived separate and apart for a period in excess of two (2) years and (2) the parties' marriage was irretrievably broken.

12

We find the filing of said motion to be dilatory, obdurate, and vexatious.

First, we reiterate that any reasonable person would have known that the parties' marriage was irretrievably broken. Defendant-Husband continued to dispute that fact and delay this litigation.

Second, we note that Defendant-Husband alleged in Paragraph 5 of his motion that he had prepared and served a Motion for Marriage Counseling on December 14, 2015. A review of the docket reflects that no such Motion for Marriage Counseling was filed of record. We find that Defendant-Husband lacked candor with the Court in making it appear that he had previously requested the Court to order marriage counseling.

Finally, we note that Defendant-Husband misquoted Section 3301(d)(2) of the Divorce Code in Paragraph 18 of his Motion for Reconsideration. Defendant-Husband alleged that Section 3301(d)(2) states that, "[f]ollowing a hearing, where one party contests the entry of a Divorce Decree, the Court *shall* continue the matter for a period *not less than 90 days nor more than 120 days* unless the parties agree to a period in excess of 120 days." (emphasis by Defendant-Husband).

Section 3301(d)(2) actually states as follows:

If a hearing has been held pursuant to paragraph (1)(ii) and the court determines that there is a reasonable prospect of reconciliation, then the court shall continue the matter for a period not less than 90 days nor more than 120 days unless the parties agree to a period in excess of 120 days. During this period, the court shall require counseling as provided in section 3302 (relating to counseling). If the parties have not reconciled at the expiration of the time period and one party states under oath that the marriage is irretrievably broken, the court shall determine whether the marriage is irretrievably broken. If the court determines that the marriage is irretrievably broken, the court shall grant the divorce. Otherwise, the court shall deny the divorce.

Thus, it is clear from a plain reading of the statute that the Court is only required to continue a case for 90-120 days when, after a hearing, it has determined that there is a reasonable prospect of reconciliation. We found in our Order dated June 14, 2016, that the parties' marriage was irretrievably broken. Therefore, as there was no reasonable prospect of reconciliation between Plaintiff-Wife and Defendant-Husband, we were not required to continue the case for any length of time.

### D. Defendant-Husband's continued efforts to request irrelevant information

Plaintiff-Wife produced discovery responses on more than one occasion. Despite this, Defendant-Husband continuously sought discovery responses from Plaintiff-Wife.

13

A portion of the discovery sought by Defendant-Husband was clearly inappropriate as it concerned whether the parties' marriage was irretrievably broken. That issue had been resolved by this Court both on the record on June 14, 2016, and in a written Order dated June 14, 2016.

Defendant-Husband filed several motions to compel discovery. He filed said motions on May, 26, 2017, August 22, 2017, September 29, 2017, December 1, 2017, and January 23, 2018.

With respect to the Motion to Compel filed on May 26, 2017, Defendant-Husband alleged, *inter alia,* that Defendant-Wife failed to respond to his Second Set of Interrogatories. *See* docket entry no. 32, Paragraphs 6, 8 [sic], and Proposed Order.

We note that interrogatories 3-7 of Defendant-Husband's Second Set of Interrogatories are irrelevant to equitable distribution issues. *See* Exhibit H-54, Defendant-Husband's Second Set of Interrogatories. These interrogatories seek information regarding the following: whether Plaintiff-Wife has used more than one cellular phone or email address since the date of marriage, whether Plaintiff-Wife is living with anyone, and whether Plaintiff-Wife has given or received any gift(s) from unrelated males since the date of marriage.

Such interrogatories serve only to harass Plaintiff-Wife.

By letter to Plaintiff-Wife's counsel dated August 18, 2017 (*see* Exhibit H-51), Defendant-Husband sets forth why he believes certain discovery responses of Plaintiff-Wife are deficient. Several of Defendant-Husband's interrogatories are related to irretrievable breakdown of the marriage, which had already been ruled upon by the Court on June 14, 2016. *See*, Exhibit H-51, Defendant-Husband's complaints regarding First Set of Interrogatories numbers 4-19, 21-22 and Defendant-Husband's complaints regarding Second Set of Interrogatories numbers 3-7.

Despite the Court's determination that the parties' marriage was irretrievably broken, which we made at the conclusion of the hearing on June 14, 2016, Defendant-Husband continued to seek the information set forth in the preceding paragraph. See Paragraph 6 and the Proposed Order in the motions to compel filed on August 22, 2017, September 29, 2017, December 1, 2017, and January 23, 2018.

Defendant-Husband's continued pursuit of discovery as highlighted above is dilatory, obdurate, and vexatious. The Court had specifically ruled that the parties' marriage was irretrievably broken.

14

Furthermore, any discovery related to Plaintiff-Wife's conduct both during the marriage and post-separation are irrelevant because: (1) fault grounds for a divorce have not been sought by Defendant-Husband and (2) a request for alimony has not been raised.

### E. Defendant-Husband's statement to Mr. Mullaney

During the hearing on March 12, 2018, Mr. Mullaney testified that, approximately one (1) week prior to the hearing of March 12, 2018, Defendant-Husband stated to Mr. Mullaney that he would agree to a withdrawal of the divorce action so the parties could remain married.

We find such testimony by Mr. Mullaney to be credible. Furthermore, Defendant-Husband did not dispute that he made said statement to Mr. Mullaney. Such a statement by Defendant-Husband is further proof of his dilatory, obdurate, and vexatious conduct. Plaintiff-Wife was quite adamant that the marriage was over. We cannot force Plaintiff-Wife to remain in this broken marriage.

It is clear that Defendant-Husband has no real interest in salvaging the marriage as he has a 10-month-old child with his current girlfriend, and they reside together.

Defendant-Husband's continued assertion that the marriage is not irretrievably broken is a disservice to Plaintiff-Wife as well as Defendant-Husband's girlfriend and their child.

### F. Defendant-Husband's failure to produce required documentation

Defendant-Husband failed to produce documentation to the Equitable Distribution Master for the hearing on August 23, 2017. *See* docket entry no. 45.

Defendant-Husband also failed to file a pre-trial statement, which is required pursuant to Pa.R.C.P. 1920.33(b).

We find it incredible that Defendant-Husband has consistently alleged that Plaintiff-Wife has failed to produce discovery responses and/or produced incomplete responses when the record reflects that it is Defendant-Husband who has failed to follow the Rules of Civil Procedure.

### G. Amount of Attorney's Fees

The following counsel fees incurred by Plaintiff-Wife will be awarded to her as a result of Defendant-Husband's dilatory, obdurate, and vexatious conduct in this action. These fees are for work

15

concerning: (1) Defendant-Husband's allegation that the marriage was not irretrievably broken and (2) Defendant-Husband's numerous Motions to Compel.

It is clear to any objective, reasonable person that the parties' marriage was irretrievably broken prior to the hearing on June 14, 2016. Defendant-Husband did not request the Court to order counseling until the phone conference of April 13, 2016.

Much of Defendant-Husband's discovery requests concerning irretrievable breakdown[5] of the marriage was irrelevant and harassing. Even after the Court had issued a ruling on June 14, 2016, in which we determined that the marriage was irretrievably broken, Defendant-Husband continued to seek discovery regarding irretrievable breakdown of the marriage. *See, e.g.*, Defendant-Husband's correspondence dated August 18, 2017 (*see* Exhibit H-51), and Defendant-Husband's Motions to Compel filed on August 22, 2017, September 29, 2017, December 1, 2017, and January 23, 2018.

Attached as Exhibit "A" to this Order and Divorce Decree is an itemization of Plaintiff-Wife's legal fees incurred through approximately January 8, 2018. We will award Plaintiff-Wife counsel fees for the items on Exhibit "A" that we have denoted with a check mark. That amount totals $9,432.50.

We will also award counsel fees for the two-hour discovery hearing on February 2, 2018 ($385/hour x 2 hours = $770). Thus, the **total award of attorney's fees is $10,202.50.**

### III. Plaintiff-Wife's Student Loans and Car Payment

During the hearing on March 12, 2018, Defendant-Husband introduced evidence that the balance owed on at least one of Plaintiff-Wife's student loans (sequence no. 3 on Exhibit H-9) as well as the balance owed on her 2008 Honda CR-V were paid from the parties' joint checking account during the marriage.

In light of our finding that, during the course of the marriage, Plaintiff-Wife contributed more to the marital expenses than Defendant-Husband, we will not reimburse Defendant-Husband for any payments made during the course of the marriage to Plaintiff-Wife's student loans and car loan.

---

[5] The majority of Defendant-Husband's requests in his First Set of Interrogatories and First Request for Production of Documents was related to whether the marriage was irretrievably broken. A portion of Defendant-Husband's requests in his Second Set of Interrogatories and Second Request for Production of Documents was related to whether the marriage was irretrievably broken. Defendant-Husband's **Third Set of Interrogatories and Third Request for Documents** concerned Plaintiff-Wife's request for attorney's fees; since those requests were relevant, we will not award Plaintiff-Wife counsel fees for work performed on those requests.

16

### IV. Plaintiff-Wife's Checks Written after the Date of Separation

During the hearing on March 12, 2018, Defendant-Husband introduced evidence that Plaintiff-Wife had written checks on the parties' joint checking account after the parties had separated.

We note that, although the evidence shows that Plaintiff-Wife did write checks and make debits following the parties' separation on July 15, 2013, Plaintiff-Wife continued to deposit her paycheck into the joint checking account until September 13, 2013. *See* Exhibit H-39, page 1 of the account statement dated September 24, 2013.

Since Plaintiff-Wife continued to deposit her pay into the joint checking account until September 13, 2013, we will not reimburse Defendant-Husband for any checks written, or debits charged, by Plaintiff-Wife following the date of separation on July 15, 2013.

### V. 2013 Taxes

Defendant-Husband has requested that the parties share 50:50 in the refund/liability for 2013 taxes. Each party filed her/his 2013 tax return as married filing separately. Defendant-Husband owed federal taxes in the amount of $1,449; Plaintiff-Wife received a refund on her 2013 tax return in the amount of $1,039. *See* Exhibits H-40 and H-15.

The parties separated on July 15, 2013. Each party had the ability to decide how much she/he withheld in taxes. We will not disturb the decision of each party to withhold a particular amount of her/his pay.

Furthermore, it is possible that either or both parties changed the amount of taxes she/he withheld during 2013, and no evidence regarding that possibility was presented.

Thus, we will not disturb the amount of taxes refunded/owed regarding the 2013 tax year.

### EQUITABLE DISTRIBUTION ORDER AND DIVORCE DECREE

**AND NOW**, this 14th day of May, 2018, following a hearing before the Court on March 12, 2018, and for the reasons set forth above, it is hereby **ORDERED** and **DECREED** that **SARA L. POIST** and **MARK E. POIST** are **DIVORCED** from the bonds of matrimony, and all the duties, rights, and claims accorded to either of the said parties at any time heretofore, in pursuance of said marriage, shall

17

henceforth cease and determine, and the said parties shall severally be at liberty to marry again as if they had never been married.

It is **FURTHER ORDERED, ADJUDGED, and DECREED** that:

(1) Defendant-Husband shall, **within 10 days** of the date of this Equitable Distribution Order and Divorce Decree, take all steps required to remove Plaintiff-Wife's name from the following two (2) BB&T bank accounts: (1) account ending in 7924 and (2) account ending in 9255. If BB&T requires any action by Plaintiff-Wife to remove her name from these accounts, then Plaintiff-Wife shall take any such action in a timely manner;

(2) As there was no testimony from either party requesting specific marital personal property, all personal property, furniture, furnishings, bank accounts, investment accounts, pension plans, employee benefits, Individual Retirement Accounts, life insurance, motor vehicles, etc. shall remain the property of the party presently in possession thereof or according to legal title thereto;

(3) The marital assets of the parties shall be split 65% to 35% in favor of Plaintiff-Wife. The value of the marital assets is $67,889.46.

Defendant-Husband's 35% share of the marital assets is $23,761.31. That amount shall be reduced by $10,202.50 as a sanction for Defendant-Husband's dilatory, obdurate, and vexatious conduct during the course of this action. See the discussion above regarding award of attorney's fees.

Thus, Defendant-Husband's share of the marital assets is summarized as follows:

$23,761.31 (which is 35% of the value of the marital assets)

-10,202.50 (attorney fees for Defendant-Husband's dilatory, obdurate, and vexatious conduct)

+    130.00 (to equally divide the parties' joint savings account)
_____
$13,688.81

Defendant-Husband shall retain the entire marital portion of his Rollover IRA and OBBB 401(k); this equals $9,450.24.

$13,688.81

-  9,450.24 (retained by Defendant-Husband)
_____
**$4,238.57**

18

(4) **Within 60 days of the date of this Equitable Distribution Order and Divorce Decree,**

Plaintiff-Wife shall pay to Defendant-Husband the amount of $4,238.57 (less any amount incurred in the

preparation of a QDRO as specified in the following paragraph).

If Plaintiff-Wife decides to pay this amount to Defendant-Husband by means of a Qualified

Domestic Relations Order ("QDRO"), then each party shall be responsible for one-half of the cost to

prepare the QDRO. Defendant-Husband's share of the cost to prepare the QDRO shall be deducted from

the $4,238.57 to be paid to Defendant-Husband.

BY THE COURT:

RHONDA LEE DANIELE, J.

Copy of this Equitable Distribution Order and
Divorce Decree mailed to the following on 5/*14* /2018:

Cheryl Leslie, Court Administration (Interoffice mail)
Martin P. Mullaney, Esquire (First-class mail)
Mark E. Poist, City of Philadelphia Law Department, 1401 John F. Kennedy Blvd., Suite 5-119,
Philadelphia, PA 19102 (First-class mail)

Judicial Assistant