OPINION BY STABILE, J.:
Appellant, James E. Brubaker ("Husband"), appeals from the amended divorce decree entered October 23, 2017. We affirm.
Husband and Appellee, Susan M. Brubaker ("Wife") were married in May of 1997 and separated in May of 2014. The parties share physical and legal custody of their four children, aged six to twelve years old as of time of the the master's hearings. Husband filed a complaint in divorce on August 26, 2014. On September 10, 2014, Wife filed an answer and counterclaim seeking, alimony, alimony pendente lite ("APL"), counsel fees, and expenses. The parties eventually stipulated to proceed under the no fault provisions of 23 Pa.C.S.A. § 3301(c).
The appointed master conducted hearings on September 30 to October 1, 2015, January 7 to January 8, 2016. The master *184 filed her report and recommendation on September 22, 2016. Husband filed 17 exceptions on October 11, 2016. The trial court entered the decree on appeal on October 23, 2017, supported by an opinion dated October 27, 2017. The trial court denied reconsideration by order of November 13, 2017, and this timely appeal followed.
Husband raises the following issues on appeal:
A. Did the trial court err in adopting the divorce master's recommendation that Husband's combined business interests, referred to as the VERDE project, have a marital value of $515,152.00 in direct opposition to the experts for both parties who testified the liabilities of the company exceeded its value?
B. Alternatively, if Husband's combined business interests, referred to as the VERDE project, are assigned a positive value, in direct opposition to experts for both parties who testified the liabilities of the company exceeded its value, did the trial court err in failing to consider the factors set forth at 23 Pa.C.S.A. § 3502(a)(10.1) and 23 Pa.C.S.A. § 3502(a)(10.2) as they pertain to the VERDE project?
C. Did the trial court err in ordering an equitable distribution payment structure to Wife that exceeds Husband's ability to pay?
D. Did the trial court err in adopting the divorce master's recommendation that Wife receive alimony in the sum of $1,500.00 per month for a term of ten years when alimony is a secondary remedy and the factors set forth at 23 Pa.C.S.A. § 3701(b) do not weigh in favor of such an award?
E. Did the trial court err in adopting the divorce master's recommendation that Husband pay Wife $20,000.00 for attorney's fees.
Husband's Brief at 4.
We review a challenge to the trial court's equitable distribution scheme as follows:
A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.
Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe *185 and assess the behavior and demeanor of the parties.
Carney v. Carney , 167 A.3d 127, 131 (Pa. Super. 2017).
Husband first challenges the trial court's valuation of the VERDE project. Because both parties' experts testified that the VERDE project's debts exceeded its value, Husband claims the trial court erred in ascribing a value of $515,152.00. The Divorce Code does not specify an asset valuation method, and therefore the trial court must rely on its own discretion. Verholek v. Verholek , 741 A.2d 792, 796 (Pa. Super. 1999), appeal denied , 563 Pa. 665, 759 A.2d 388 (2000). The trial court may accept all, part, or none of the evidence regarding valuation of marital property, and it may rely on its own valuation method. Id. In determining a valuation date, the trial court must choose a date "which best works economic justice between the parties." Smith v. Smith , 904 A.2d 15, 18 (Pa. Super. 2006). "Since a business' value may be subject to great fluctuation, the date selected is generally close to the date of distribution, rather than the date of separation." Id. at 18-19.
In 2011, Husband was earning approximately $200,000.00 per year as a project manager for Charter Homes, but he lost that job because of a downturn in the real estate market. Prior to his departure from Charter Homes, Husband obtained an option to purchase some farm property formerly known as the Verdelli property. Husband, along with two partners, eventually made the purchase, and the land is currently under development as the VERDE project. Husband's partners provided nearly all of the initial capital, and Husband is the day-to-day manager of the property development. Upon completion, the former farm property will hold a six-building apartment complex worth approximately $19.35 million, with an estimated borrow total of $15.9 million, in which Husband will have a one-third interest. Husband's net monthly income as project manager is $8,145.02. As of the parties' separation, site preparation and construction was just underway. Wife left the workforce when the parties' first child was born, and she currently holds a part-time job.
The parties' experts agreed that, as of the hearings, the VERDE project's debts exceeded the present value of the development. It is unlikely to have positive cash flow until the completion of the fourth of the sixth buildings. Nonetheless, the VERDE project, of necessity, required the partnership to incur significant upfront debt with the prospect of a large payoff upon completion. The record reflects that Wife assisted Husband with the early phases of the VERDE project, including helping Husband name the company that will serve as the general contractor for the VERDE project, designing its logo and business cards, and visiting various apartment complexes with Husband in order to conceptualize the type of complex the VERDE project would build. N.T. Hearing, 9/30/15-10/1/15, at 360-63. In addition, Wife handled the childcare and all of the inside and outside maintenance of the parties' home during the early phases of the VERDE project. Id. at 363. The trial court valued Husband's interest in the VERDE project at $515,152.51, representing the value that Husband and his business partners assigned, in writing in their 2011 partnership agreement, to Husband's contributions to the project. See Master's Report and Recommendation, 9/22/16, at 6, ¶ 27; 2nd Street Realty Associates, LP Amended and Restated Limited Partnership Agreement. Husband argues that the trial court erred because the VERDE project was underwater as of the date of distribution. Wife argues the valuation is *186 fair based on her early contributions to a long-term project that could produce a valuable asset and significant income stream.
The parties dispute the application of several pertinent cases. In Diamond v. Diamond , 360 Pa.Super. 101, 519 A.2d 1012 (1987), appeal denied , 516 Pa. 633, 533 A.2d 92 (1987), the Husband improved properties after the parties' separation. Prior to separation, the husband's real estate firm acquired "substantial real estate assets." Id. at 1014. The husband owned and operated the company, while the wife ran the household, cared for the parties' children, and assisted with the company. Id. In Diamond , unlike the instant case, the property in question was unimproved at the time of separation. Id. at 1016. This Court concluded that an apartment complex that the husband constructed after separation was not a marital asset. Id. "We conclude that the construction of the apartment building is such a substantial change that it must be considered a new asset acquired after separation. The mere fact that the building is located on land which is marital property, does not convert the building itself into a marital asset." Id.
In Butler v. Butler , 541 Pa. 364, 663 A.2d 148 (1995), the parties disputed the value of the husband's interest in his accounting partnership. A shareholder agreement provided that, upon a partner's departure, the partnership must purchase the departing partner's shares for $2,450.00. The agreement also provided that, upon a partner's death, the partner's estate must sell, and the partnership buy, the partner's stock for $100,000.00. Id. at 150. The master considered evidence that the value of the accounting partnership as a going concern was $546,889.00. Also, the master considered that the partners valued the firm at $300,000.00 (the $100,000.00 death benefit for each of the firm's three partners). Id. at 151. He assigned a value of $423,148.16 to the firm, representing the median of the two figures, and one-third of that amount as the husband's interest. Id. The Husband argued the court erred because he could not have realized that value as of the parties' separation. Id. at 152. The Supreme Court agreed that the valuation was erroneous, because the husband could never realize that amount, but it also found the $2,450.00 specified in the shareholder agreement controlling, because it was not based upon any formula for ascertaining the firm's current value. Id. at 153. The Supreme Court also declined to rely on the $100,000.00 death benefit, as that amount represented the proceeds of a life insurance policy and, like the $2,450.00, it was not necessarily representative of the firm's current value.
The Butler Court distinguished McCabe v. McCabe , 525 Pa. 25, 575 A.2d 87 (1990), in which the partnership agreement specified a formula-the partner's share of the capital account and his undistributed profits, less any indebtedness to the firm-rather than an unchanging, fixed amount. McCabe , 575 A.2d at 88. The trial court found that husband's share in his law partnership was worth $286,276 as a going concern, but this Court valued his interest at $18,900 as per the formula specified in the partnership agreement. Id. The going concern value included all of the firm's equipment, books, cash, accounts receivable, and work in progress. Id. The Supreme Court affirmed this Court, concluding that the husband had no means of realizing the going concern value. Id. at 89. The Supreme Court also noted that the going-concern value better reflects potential future income, but future income is not marital property subject to distribution. Id. Ultimately, "[t]he substantive rights of a partner consist only of those specified in the partnership agreement, and in appraising *187 this bundle of rights, the agreement cannot be disregarded. Indeed, the agreement must be viewed as the preeminent factor in valuing a partner's rights." Id. at 89.
The instant facts do not align neatly with any of these cases. Here, unlike Diamond , site improvement was underway at the time of separation. Further, Husband used marital assets to acquire the right to purchase the site with the express purpose of developing it into a multi-million dollar apartment complex. Husband notes, correctly, that the project involves substantial risks and there is no guarantee that the VERDE project will ultimately produce an apartment complex worth $19.35 million, as its partners originally envisioned. Nonetheless, we discern no abuse of discretion in the trial court's valuation. Husband presented evidence that the project was underwater as of the time of separation and therefore argued that, as in Diamond , any future value would be the result of his post-separation efforts. Wife, on the other hand, notes that the site improvement was underway at the time of separation and that her efforts during the marriage contributed to a project with an anticipated future value of $19.35 million (with a borrow total of $15.9 million), with Husband having a one-third interest in that amount plus a potentially significant income stream.
We find Husband's reliance upon Butler and McCabe misplaced. The VERDE project, unlike the partnerships at issue in those cases, is not a going concern with accounts receivable, accounts payable, and a client base. It is a real estate development project that required significant up front borrowing to facilitate the long-term goal of completing a valuable apartment complex. Butler establishes that an agreed upon value in a partnership contract does necessarily control a trial court's equitable distribution analysis, especially where, as here, the agreement specifies a static value rather than a formula for determining the value at a given point in time. But Butler does not preclude the trial court from relying on the contractual value in an appropriate case, and the McCabe Court identified a partnership agreement as a preeminent factor in determining the value of a partner's interest. McCabe , 575 A.2d at 89.
We believe the trial court, given the evidence of record and applicable case law, acted within its discretion in relying on the value of Husband's initial contribution to the project as agreed upon among Husband and his partners. Wife thereby receives compensation for her contributions during the early, pre-separation phase of the VERDE project, but Husband will reap the benefits if the project, through Husband's post-separation efforts, reaches its anticipated value and revenue stream. In essence, the trial court found that the partners' agreed upon value reflects the cash and in-kind contributions Husband made to the partnership during the marriage and with Wife's support. Thus, Wife will receive her share of the value of an asset she helped create. As the master put it:
[G]iven that this project was conceptualized and created by Husband during the marriage, marital funds were used to acquire the option to purchase the Verdelli property, Wife fully supported Husband in this endeavor even though it resulted in a reduced standard of living and caused the parties to incur substantial marital credit card debt to meet their basic needs, it is certainly not equitable for the master to value this project at $0 when Husband stands to gain an interest valued possibly in excess of a million dollars and a substantial income stream.
*188 [...]
Because of all the marital effort that went into this project, and as previously set forth in this Report, when Husband brought his two business partners into the Limited Partnership, his equity in the partnership was determined to be $515,151.51. In effect, Husband was paid $515,152 for his development of the project. Had Husband, as he testified was his original plan, simply sold the [purchase option] the marital estate would have received the $515,152 and Husband would have been able to obtain a job paying about what he is currently earning on the project. The only reason Husband is in a position to make a significant amount of money is because he, in effect, sold this marital asset to the Limited Partnership. The very essence of this project is rooted in a clearly marital asset.
Report and Recommendation, 9/22/16, at 22-23.
Furthermore, we do not find the trial court's reliance upon the 2011 partnership agreement to be in error. As we have already explained, the trial court used the 2011 agreement as a way of valuing Wife's contribution to a long-project that required significant upfront borrowing. The trial court used that figure to compensate Wife for her marital contributions, while leaving Husband free to reap the long-term rewards if the project is as successful as anticipated. Under these circumstances, we do not believe the trial court erred in relying upon the 2011 agreement to determine a value of the VERDE project for equitable distribution purposes.
Finally, we observe that the master found Husband to be less than forthcoming regarding several matters, including the marital assets contributed to the VERDE project:
Husband was so intent in trying to convince the master that there was no marital value to his business interests that at best, he fudged the truth and at worst, he outright lied.
[...]
During the marriage, with Wife's full support and with marital funds, Husband obtained a Sale Agreement providing him with the option to purchase the Verdelli Property. Husband paid over $10,000 for the option to purchase. Husband then began to draw up plans for the development of this property. In doing so, Husband drew on his many business contacts acquired during his tenure with Charter Homes and often in the evening when Wife was home with the children. [...] [W]hen Husband entered into the Limited Partnership Agreement for 2nd Street Realty Associates, LP, his contribution [...] was the Sale Agreement which was valued at $513,351.51 and cash of $1,800. Accordingly, from the time Husband entered into the Sale Agreement for which he paid $10,000, to the time the Limited Partnership was formed, the value of the Sale Agreement had increased, through Husband's marital efforts, to $513,351.51. Nevertheless, on direct examination, Husband testified as follows:
Q. In fact, this whole project so far you've done nothing but take money out of it in the form of a salary?
A. Correct.
Q. So you didn't put any personal assets into it? You didn't put any of your marital money into it?
A. That's correct.
Report and Recommendation, 9/22/16, at 12-13. For all of the foregoing reasons, we decline to grant relief on Husband's first assertion of error.
Next, Appellant argues the trial court erred in failing to account for the tax *189 consequences had Husband sold his interest in the VERDE project at its assigned value. The Domestic Relations Code lists factors relevant to equitable distribution, among them being the "Federal, State and local tax ramifications associated with each asset to be divided" and "the expense of sale, transfer or liquidation associated with a particular asset." 23 Pa.C.S.A. § 3502(a)(10.1) and (10.2). Those sections require consideration of:
(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.
(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.
23 Pa.C.S.A. § 3502(a) (10.1 and 10.2). Consideration of tax consequences is mandatory where, for example, an equitable distribution includes a stock award to one spouse. Powell v. Powell , 395 Pa.Super. 345, 577 A.2d 576, 584 (1990). There, we concluded that the trial court erred in not considering the consequences of selling the stock. Id. Likewise, in White v. White , 382 Pa.Super. 478, 555 A.2d 1299, 1301-03 (1989), appeal denied , 523 Pa. 633, 564 A.2d 1261 (1989), the trial court erred in failing to consider the tax consequences of an equitable distribution that would likely require the husband to liquidate his company.
More recently, in Carney v. Carney , 167 A.3d 127 (Pa. Super. 2017), this Court reasoned that consideration of the tax consequences of an equitable distribution award does not depend upon whether the sale of a given asset is likely. Id. at 133-34 (citing Balicki v. Balicki , 4 A.3d 654 (Pa. Super. 2010). Thus, where one party receives cash and another receives an asset whose value cannot be realized other than by selling, a consideration of the tax consequences of such a sale is appropriate. Id.
Instantly, the master rejected this claim for lack of evidence. Report and Recommendation, 9/22/16, at 34-35. Husband claims he failed to introduce evidence regarding the tax consequences of awarding Wife a portion of the value of Husband's interest in the VERDE project because he did not believe the project had positive value. Husband filed a motion to reopen the record after the trial court affirmed the Master's award and the trial court denied the motion. Husband cites no authority for his argument that the trial court should have reopened the record after reaching its decision in this case. Moreover, Husband fails to explain why he could not have attempted to prove, in the alternative, that even if the VERDE project was determined to have positive value, that value was partially or entirely offset by potential tax consequences of a liquidation. We therefore decline to grant relief on this issue.
Next, Husband argues that the equitable distribution schedule exceeds his ability to pay. Pursuant to the court's award, Husband must pay Wife $100,000 within 12 months and another $111,743 within 36 months. Husband argues that he has no ability to pay these amounts within the prescribed timeframe. He notes that he cannot presently liquidate his interest in the VERDE project, because it is underwater, and that liquidation of the assets he received in distribution would not cover the amount he has been ordered to pay. Further, Husband claims his current monthly income is insufficient to make payments, given his own expenses, alimony, and child support. Husband's Brief at 42. Husband does not develop this argument with any law, and it appears to be largely an afterthought to his assertion *190 that the trial court's valuation of Husband's interest in the VERDE project was inequitable. Furthermore, the master's report indicates that some of Husband's claimed monthly expenses were inflated. Report and Recommendation, 9/22/16, at 26. We decline to grant relief.
Next, Husband argues the trial court erred in ordering him to pay alimony of $1,500.00 per month for ten years. "Where a divorce decree has been entered, the court may allow alimony, as it deems reasonable, to either party only if it finds that alimony is necessary." 23 Pa.C.S.A. § 3701(a). "Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay." Balicki v. Balicki , 4 A.3d 654, 659 (Pa. Super. 2010). "An award of alimony may be reversed where there is an apparent abuse of discretion or there is insufficient evidence to support the award." Id.
Section 3701(b) of the Domestic Relations Code specifies factors relevant to an alimony award, among which are "the parties' earnings and earning capacities, income sources, mental and physical conditions, contributions to the earning power of the other, educations, standard of living during the marriage, the contribution of a spouse as homemaker and the duration of the marriage." Teodorski v. Teodorski , 857 A.2d 194, 200 (Pa. Super. 2004).
Husband argues that the hearing master erred in computing his net monthly income at $8,145.02 rather than $7,541.00, as asserted by Husband's expert. Husband also argues that the hearing master failed to account for Husband's child support. The record does not support Husband's argument, as the master expressly found that, as of the date of the report and recommendation, Husband was paying $2,310.31 per month in unallocated child and spousal support. Report and Recommendation, 9/22/16, at 8, ¶ 54. The master noted Husband's support obligation several times in her discussion of the § 3701(b) factors. Id. at 42, ¶13. Most significantly, the master wrote that, after entry of a final and unappealable alimony order, "the child support obligation will be recalculated to take into consideration the alimony paid by Husband to Wife." Id. at 40, ¶7. The record flatly contradicts Husband's argument that the master failed to consider his support obligation. Moreover, Husband offers no reason why the master was required to accept the net monthly income calculated by his expert.
Husband's argument also ignores the evidence of Wife's needs. The master further found that, "[s]ince separation, Husband has enjoyed a superior standard of living to that of Wife. Husband has remained in the marital residence and has been able to enjoy vacations with the children. Wife is in a rented property and has not been able to match the vacations taken by Husband." Id. at 40-41, ¶8. Further, master found that "Wife is unable to pay her basic expenses with her income at this point in time even with the full time earning capacity assessed to her by the [trial court]." Id. at 43, ¶17. The Master also noted that Wife has no benefits through her employer, whereas Husband receives healthcare coverage. Id. at 39, ¶3. Wife had been out of the workforce for a long time taking care of the parties' children, and therefore she would need time to become self-supporting. Id. at 41, ¶9; 42, ¶ 12.
In accepting the master's alimony recommendation, the trial court reasoned:
The Master did consider the fact that Husband's award was mostly debt and the Wife would receive a lump sum payment followed by payments over three years. Wife is renting and may be able to buy a home with that money to regain *191 her former lifestyle which Husband continues to enjoy in the marital residence. She has substantial legal fees which have exhausted the benefit of the retirement account award. Given the considerations enumerated by the Master, there is no indication that the alimony recommendation, both in amount and duration, but is indeed reasonable and necessary.
Trial Court Opinion, 10/27/17, at 17. Husband has not attempted to refute any of the findings of Wife's need for alimony, and he has failed to support his argument that he is unable to pay. We therefore will not grant relief.
Finally, Husband argues the trial court erred in ordering him to pay $20,000.00 toward Wife's counsel fees. Section 3702 of the Domestic Relations Code permits the trial court to award reasonable counsel fees where appropriate. 23 Pa.C.S.A. § 3702.
We will reverse a determination of counsel fees and costs only for an abuse of discretion. The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be 'on par' with one another.
Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution.
Counsel fees are awarded only upon a showing of need. In most cases, each party's financial considerations will ultimately dictate whether an award of counsel fees is appropriate. Also pertinent to our review is that, in determining whether the court has abused its discretion, we do not usurp the court's duty as fact finder.
Busse v. Busse , 921 A.2d 1248, 1258 (Pa. Super. 2007), appeal denied , 594 Pa. 693, 934 A.2d 1275 (2007).
Husband argues that some of Wife's conduct was dilatory, including her failure to respond to discovery requests and her refusal to stipulate to the accuracy of Husband's appraisal of the marital home. Husband's Brief at 49. Husband also claims that Wife is not entitled to counsel fees because he has paid APL throughout these proceedings.
We have already explained above that the appraised value of the marital home was problematic. As for the discovery issues, Husband claims he spent $1,615.00 to compel Wife's response. He does not explain how this amount should have affected the ultimate award of counsel fees to wife.
The master found as follows:
[O]ther than his assertion in his post-hearing submission and an exhibit that was admitted without testimony, Husband fails to present any evidence of how Husband's legal expenses were attributable to Wife's unnecessary discovery efforts. Accordingly, this is not a basis upon which to award attorney's fees and costs.
In the present case, Wife incurred total counsel fees, costs, and expenses in an amount exceeding $65,000 in the divorce action alone as of the January 2016 hearing. Husband's total fees are unknown. However, given the law firm representing Husband in the divorce action is the firm representing the Limited Partnership, it is certainly possible that Husband's fees [...] should have been readily available to Husband's divorce attorney. Wife utilized her share of Husband's 401(k) plan advanced to her per agreement of the parties to pay a good *192 portion of her attorney's fees. However, that means, not only did Wife pay a substantial tax liability when she withdrew these funds, but it also means that she no longer has these funds available for retirement. Although Husband was paying Wife support, it was clearly not sufficient to meet her reasonable needs and pay all of the attorney's fees and costs incurred in this proceeding.
Neither party disputes the reasonableness of the other party's attorney's hourly rate. The master has reviewed Wife's attorney's fees exhibit and finds that he fees contained on the exhibit are reasonable and not uncommon in cases with these types of complex issues. Husband is obviously in a much better financial position than Wife, however, he too is struggling somewhat at this point in time. Nevertheless, it is equitable for Husband to reimburse Wife in the amount of $20,000 for attorney's fees and costs.
Report and Recommendation, 9/22/16, at 46-47.
Thus, Husband has failed to substantiate his claim of Wife's alleged misconduct during discovery. Furthermore, Husband has failed to address any of the evidence indicating that his current financial position is far stronger than Wife's. We conclude the trial court did not abuse its discretion in adopting the master's recommendation.
In summary, we have considered all of Husband's assertions of error and found them lacking in merit. We therefore affirm the decree.
Decree affirmed.