J-A26034-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CECELIA ANYIKA-FRANCIS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| YUSUFU ANYIKA | : | |
| | : | |
| Appellant | : | No. 377 EDA 2021 |

Appeal from the Decree Entered April 23, 2021
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  No. CV-2016-003838

BEFORE:  BOWES, J., STABILE, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:               **FILED DECEMBER 14, 2021**

Yusufu Anyika (Husband) appeals, *pro se*, from the divorce decree entered in the Delaware County Court of Common Pleas. Husband takes issue with the court's equitable distribution order, which divided the martial property between him and Cecelia Anyika-Francis (Wife).[1]  Husband also challenges the order holding him in willful contempt of court for failure to comply with the court's equitable distribution order.[2]  Upon careful review, we affirm on the basis of the trial court opinion.

---

[1] Wife did not file an appellee's brief in this matter.

[2] As will be discussed in more detail below, Husband purports to appeal from the equitable distribution and contempt orders.  The final, appealable order in divorce litigation, however, is generally the divorce decree.  **See Wilson v. Wilson**, 828 A.2d 376, 377-78 (Pa. Super. 2003).  We have corrected the

*(Footnote Continued Next Page)*

Husband and Wife were married on November 27, 1999, and have two minor children. The trial court found the date of separation was May 2, 2016,[3] when Wife filed a complaint in divorce. *See* Trial Ct. Op., 6/4/21, at 1. Wife served the complaint upon Husband on May 25, 2016. In May 2018, the master filed a report and recommendation. Both parties filed objections. The trial court then held a hearing *de novo* in December 2019, and issued an equitable distribution order, which included findings of fact and conclusions of law, on February 25, 2020.[4] The court ordered that the parties' marital estate would be divided with Wife receiving 45% and Husband receiving 55%. This included marital assets (three properties in the Philadelphia area, four vehicles, and retirement saving accounts) and marital debts (a credit card in Wife's name).[5] The court also withdrew Wife's claim for alimony and found she was not entitled to an award of counsel fees.

---

caption of Husband's appeal to reflect that his appeal is from the divorce decree entered on the docket, and sent to the parties, on April 23, 2021.

[3] The parties also stipulated to this date. *See* Trial Ct. Op. at 11; *see also* N.T., 12/4/2019, at 9.

[4] Husband filed a premature notice of appeal from the court's equitable distribution order, which this Court quashed in a July 9, 2020, order. *See* Order, 7/9/20, Docket No. 1183 EDA 2020. *See also* Pa.R.A.P. 341(b)(1); *Fried v. Fried*, 501 A.2d 211 (Pa. 1985).

[5] Relevant to this appeal, the court appointed an appraiser to assess the value of the real estate, and ordered that upon receipt of the appraisals, the parties were to decide whether to sell the property or buy other the other party's share at the appraisal value. *See* Trial Ct. Op. at 4-5.

The parties were subsequently divorced from the bonds of marriage by decree dated November 8, 2020.

During this time, Wife filed a petition for contempt and to enforce the equitable distribution order. A hearing was held on November 6, 2020. Subsequently, on January 29, 2021, the court granted Wife's petition, finding that Husband was in willful contempt of the court's equitable distribution order by failing to cooperate with Wife to complete the real estate transactions for all three properties. *See* Order, 1/29/20. The court ordered that Husband vacate the premises of one of the properties, that Wife shall have sole control and authority over the sale of all three properties, and that Husband shall cooperate with the listing agent in connection with the sale of the properties. *See id.* The court also issued sanctions against Husband in the amount of $3,000.00 for attorney's fees incurred by Wife as result of the ongoing contempt by Husband. *See id.*

On February 16, 2021, Husband filed a *pro se* notice of appeal from the court's equitable distribution and contempt orders. The trial court directed Husband to file a timely Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and he complied. Thereafter, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on June 4, 2021.

Preliminarily, we must address the timeliness of Husband's notice of appeal. *See* Pa.R.A.P. 903(a) (notice of appeal shall be filed within 30 days after an order is entered on the trial court docket); *see also Commonwealth*

*v. Capaldi*, 112 A.3d 1242, 1244 (Pa. Super. 2015) ("We lack jurisdiction to consider untimely appeals, and we may raise such jurisdictional issues *sua sponte*."); *Affordable Outdoor, LLC v. Tri-Outdoor, Inc.*, 210 A.3d 270, 274 n.5 (Pa. Super. 2019) (quoting *Capaldi*).

There is no dispute that the notice of appeal for the contempt order was timely filed. However, in April of 2021, this Court received correspondence from the trial court, asserting, *inter alia*, that Husband's appeal of its equitable distribution order was untimely because: (1) the divorce decree was entered on November 16, 2020; (2) the notice of appeal as to the equitable distribution order needed to be filed within 30 days of entry of the decree, which would have been December 16, 2020; and (3) Husband did not file his notice until February 2021. *See* Correspondence from Judge William C. Mackrides, 4/15/21, at 1-2 (unpaginated).

On April 21, 2021, this Court entered an order addressing the trial court's analysis. Notably, we determined there were several procedural missteps at the trial level that led to the court's erroneous conclusion regarding the timeliness of Husband's appeal. First, while the equitable distribution order was dated February 25, 2020, it was not entered on the trial court's docket until July 1, 2020. Accordingly, the July 1st date is the proper date for timeliness purposes. *See* Order, 4/21/21, at 1-2 (unpaginated).

Second, although the trial court's docket revealed that the divorce decree was docketed on November 18, 2020, there was no Pa.R.C.P. 236[6] entry indicating the date the decree was sent to the parties as required by the Pennsylvania Rules of Appellate Procedure. *See* Pa.R.A.P. 108(b) (date of entry of an order shall be the day on which the court makes the notation in the docket that notice of entry has been given as required by Rule 236); Pa.R.A.P. 301(a)(1) ("no order of a court shall be appealable until it has been entered upon the appropriate docket in the trial court"). Therefore, in our order, we directed the Delaware County Office of Judicial Support ("OJS") to properly enter the divorce decree on the trial court docket, and the trial court to send a copy of the updated trial court docket, demonstrating the decree's recent entry on the docket, to this Court. We further stated that Husband's appeal, filed prior to the divorce decree's entry on the docket, was to be treated as timely filed. *See* Order, 4/21/21, at 2 (unpaginated).

This Court subsequently received an updated trial court docket on April 28, 2020. However, the OJS improperly backdated the Rule 236 notice of the divorce decree entry to November 18, 2020. Due to this breakdown at the trial court level, we entered a second order, on May 11, 2021, striking the court's April 28th response. We then directed the OJS to send an updated

---

[6] Rule 236 provides, in relevant part: "The prothonotary shall note in the docket the giving of the notice[.]" Pa.R.C.P. 236(b).

trial court docket that demonstrated the divorce decree entry on the docket was dated **after** this Court's April 21, 2021, order. *See* Order, 5/11/21.

That same day, the OJS responded by filing an updated trial court docket, that correctly indicated a Rule 236 notice was entered on April 23, 2021, evincing the divorce decree was sent to the parties. Therefore, both matters are now properly before this Court.

Husband raises three issues on appeal:

1. Whether [the] court order dated [February 25, 2020] (signed July 2020) was fair and equitable taking into consideration evidence presented and testimony by both [Wife] and [Husband]. [Wife] clearly states and stipulated many times during trial [that] she had no involvement in the acquisition and maintenance of the [three] properties in question corroborating [Husband's] statement and argument. This will render [Wife's] percentage claim to these assets to be moot or at minimum negligible. This is further exacerbated because [Wife] was never a "house-wife" or "home maker" as both parents worked full-time, each worked approximately 40[ hours] per week and had separate and equivalent incomes at the end of the marriage. In addition[, Wife] entered the marriage in [November] 1999 making [ten dollars per hour] and left the marriage (May 2016) with [an] increased income earning . . . [$85,000 per year], getting a nursing degree with [Husband]'s help during the marriage. Both parties agreed to this fact. [Husband] currently pays child support for [two] teenage children, and has been doing this for the last [five] years. During the marriage[,] both parents shared parenting duties as far as picking up kids, cooking, cleaning, [and] being there for them.

2. Date of Separation Real Estate Appraisal. [Husband] initiated [the] appraisal based upon [Pennsylvania] Rules. At a minimum[, Husband] should be given the opportunity to buy-out [Wife], once the true "date of appraisal" is determined during this appeal, if his percentage is not corrected. One main question for this appeal is what is the "date-of-appraisal."

3. Whether [Husband] can be found in contempt of court (order dated [January 29, 2021,]) when it is clear the initial court ruling on division of property was incomplete, unclear[,] and had errors.  Furthermore[, Husband] was cooperative and made numerous attempts to rectify the situation through [a] motion to reconsider together with emails and phone calls to [Wife] (counsel) and testimony at the contempt hearing and evidence . . . .  [Husband] also initiated appraisal of the properties making all payments up front with trust that [Wife] will reimburse her portion to him.  [Husband] still [has] not received his reimbursement.  Instead of sending monies to [Husband] after getting her copy of the appraisal report[, Wife] sent the monies to the appraiser knowing the payments were already made.  [Husband] has spent the last [six months] trying to get the monies from the appraiser without success. Evidence can be provided.

Appellant's Brief at 4-5 (emphasis and some capitalization omitted).

Prior to addressing Husband's substantive claims, we note the following:

[A]ppellate briefs and reproduced records must materially conform to the requirements of the Pennsylvania Rules of Appellate Procedure.  Pa.R.A.P. 2101.  This Court may quash or dismiss an appeal if the appellant fails to conform to the requirements set forth in the Pennsylvania Rules of Appellate Procedure.  Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant.  To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing.

*Commonwealth v. Adams*, 882 A.2d 496, 497-98 (Pa. Super. 2005) (some citations omitted).  *See Branch Banking & Tr. v. Gesiorski*, 904 A.2d 939, 942 (Pa. Super. 2006) (same).  As such, we cannot serve as Husband's counsel and litigate his claims for him.

Initially, we note Husband filed a nine-page concise statement that included more than 28 issues, which the trial court described as "written in a

disorganized, narrative format, often containing unnecessary background information and commentary." Trial Ct. Op. at 8. Nevertheless, the court was able to discern and address the following issues: (1) the court erred in "its valuation and distribution of the marital assets and assignment of percentages to the parties[;]" (2) the court erred because "it did not include additional marital debt incurred by him and he should be given credit for the same[;]" (3) the court erred in including the Teva Pharmaceutical Retirement Account in the list of marital assets; (4) the court erred by not including additional assets that were attributable to Wife in the marital asset list, including her bank account and vehicle; and (5) the court erred in entering its contempt order based on the date of separation for the appraisal and because Husband was compliant with the order by contacting and paying for the appraisal. *Id.* at 8, 26, 27, 28, 31.

Moreover, Husband's *pro se* brief is similar in nature to his concise statement as it is disjointed, and difficult to decipher his arguments. *See* Appellant's Brief at 12-18. Husband's brief also fails to conform to several of our appellate rules. For example, it does not include a statement of jurisdiction or a statement of the scope of review and the standard of review. *See* Pa.R.A.P. 2111(a)(1), (3). It also does not point to the order or other determination in question. *See* Pa.R.A.P. 2111(a)(2). Furthermore, with the exception of a few citations to 23 Pa.C.S. §§ 3502 (equitable division of marital property), 3505 (disposition of property to defeat obligations), and 3506

(statement of reasons for distribution), the brief provides no citations to legal authority. *See* Pa.R.A.P. 2119(b). Lastly, the argument section of the brief is not divided into as many parts as there are questions presented. *See* Pa.R.A.P. 2119(a). Such deficiencies could result in quashal or dismissal of Husband's appeal. *See* Pa.R.A.P. 2101. Nevertheless, because we are able to glean the nature of his arguments from the brief, we will proceed to examine the merits of his claims.

As noted above, Husband challenges both the equitable distribution and contempt orders. "Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." *Brubaker v. Brubaker*, 201 A.3d 180, 184 (Pa. Super. 2018) (citation omitted).

> This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.
>
> Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence.

*Id.* (citation omitted).

As for contempt orders, our standard of review is limited: "When considering an appeal from an [o]rder holding a party in contempt for failure to comply with a court [o]rder, . . . we will reverse only upon a showing the court abused its discretion." ***Habjan v. Habjan***, 73 A.3d 630, 637 (Pa. Super. 2013) (citations and quotation marks omitted).

After a thorough review of the record, the parties' briefs, the relevant law, and the well-reasoned opinion of the trial court, we conclude there is no merit to Husband's issues, and we affirm on the basis of the court's opinion. ***See*** Trial Ct. Op. at 7-35 (finding: (1) both parties were credible; (2) based on the specific circumstances before the court — including that Wife contributed to the marriage and family both financially and physically and Husband reaped the benefit of Wife's increased earning capacity as a nurse as result of receiving her nursing degree and working as a nurse —  the court determined it did not abuse its discretion in distributing the marital assets as it did with Wife receiving 45% and Husband receiving 55% of the marital estate; (3) as for the properties, the parties stipulated that the court would appoint an appraiser to determine the value of the properties and then the parties would decide to either sell the property or buy out the other party's share; (4) Husband failed to present any credible evidence concerning the amount of marital debt that he may owe at the equitable distribution hearing, and his attempt to supplement the record with such evidence in his March 23, 2020 motion for reconsideration was inappropriate; (5) Husband's argument

that the court erred by including his Teva Pharmaceutical Retirement Account in marital assets was without merit because Husband liquidated approximately $27,979.66 in May 2016 without the consent of Wife or the permission of the court; (6) the court did not err by failing to include Wife's bank account in the marital assets because neither Wife nor Husband presented any credible evidence concerning the value of the bank account, and Husband raised the issue of Wife's newly-discovered JP Morgan Chase retirement account for the first time in his concise statement; (7) the court did not err by failing to include Wife's automobile in the marital assets where it found Wife's testimony that she did not own a car during the marriage credible; (8) Husband's argument concerning the appraisals of the property and the contempt order was misleading and without merit where, at the equitable distribution hearing, the court and the parties discussed the value of the marital properties and two appraisals that had been conducted in 2016 around the time the parties separated and although Husband referenced comments by the court concerning the date of separation values, the trial court clarified that the court appraisal would be done as is appropriate for equitable distribution based on present value,[7] and Husband offered no explanation for his noncompliance

---

[7] A review of the November 6, 2020, contempt hearing reveals Husband had attempted to postpone the sale of the properties for nine months, he failed to cooperate with the listing agent, and he had not vacated all the properties. There was no evidence presented that the contempt finding was based on his failure to pay for the appraisals. *See* N.T., 11/6/20, at 13.

- 11 -

with the equitable distribution order other than he disagreed with it and intended to appeal it). Accordingly, we do not disturb the trial court's determinations as Husband's arguments are unavailing.

We conclude by referring to the trial court's final commentary regarding Husband's *pro se* status:

> This Court is of the opinion that many of [Husband's] seeming objections to the Equitable Distribution Order. . . and Contempt Order. . . stem from his many misunderstandings and extreme subjective characterizations which continued almost unabetted without the benefit of counsel to temper his inclinations, focus his arguments and foster his presentation of evidence. This dilemma was further solidified by his refusal to hire an attorney, because of his belief that they were "all crooks," and his extreme views about his spouse, that she deserved to receive nothing from the marriage, thereby trivializing any contribution she made to the approximately seventeen (17) year marriage. Though the Court cautioned [Husband] about his often incongruent statements and misinformation about legal procedure in presenting his case at the trial of this matter, that he must present **all** of his evidence, the Court stating at one point, "I'm really concerned about whether or not you're competently . . . presenting a case for yourself. . . . Maybe you should deal with the properties and . . . make sure that . . . before we're done, get me copies of . . . any documentation. . . [.] Well, but we're not here to do all the history. We're here for equitable distribution[.]" [Husband's] presentation was disjointed and inconsistent, [Husband] even acknowledging at one point, ["]Your Honor. I'm not a lawyer. So, all right." Yet [Husband] refused the assistance of counsel, giving a litany of reasons for his extreme distrust of attorneys. Though offering assistance to [Husband] in many instances in an attempt to focus the 'stream of consciousness' presentation of his case, *ie.* introduction of evidence, the Court is not permitted to try [Husband]'s case for him. In this regard, and as stated *infra*, following the trial, and the Court's Equitable Distribution Order . . . [Husband] filed a Motion for Reconsideration . . . to which he attached approximately 125 pages, some of them being credit card and financial documents, contending that certain marital debt should be considered by the Court, with the mistaken belief that he would be permitted to

supplement the trial record in this manner. [Husband]'s self-acknowledged ignorance of the law and of the rules of evidence is not an excuse for his not following procedural rules of court and the Court's Orders. Furthermore, at one point, [Husband] seems to contend that there was a term in the Equitable Distribution Order that was impossible for him to follow, in reference to an IRS refund check, "The order says something about the IRS check that we're supposed to split." In fact, when questioned as to what he was specifically referring to, [Husband] pointed to a portion of the Court's Equitable Distribution Order summarizing trial testimony, and not to any portion of the Order governing or directing the split of assets by the parties.

Trial Ct. Op. at 34-35 (record citations omitted).

We direct that a copy of the trial court's June 4, 2021, opinion be filed along with this memorandum and attached to any future filings in this case.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/2021

- 13 -