J-S03031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| EDWARD J. WEAVER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHARON R. WEAVER | : | No. 1128 MDA 2023 |

Appeal from the Order Entered July 25, 2023
In the Court of Common Pleas of Dauphin County Domestic Relations at
No(s):  00978-DR-22,
PACSES No. 956301712

BEFORE:  OLSON, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED: FEBRUARY 7, 2024**

Edward J. Weaver ("Father") appeals from the child support order entered by the Dauphin County Court of Common Pleas (the "trial court"), directing Sharon R. Weaver ("Mother") to pay what Father contends is an insufficient amount because it erroneously deducted expenses from Mother's rental income; improperly calculated his earning capacity; and failed to account for proceeds Mother received from the sale of land in determining her income.  Finding the issues either waived or meritless, we affirm.

The parties were married in April 2012 and had a child, L.W., in February 2014.  The parties divorced in December 2018.  They entered into a marital settlement agreement to divide their assets as part of their divorce and shared custody of L.W.

On September 2, 2022, Father filed a complaint in child support against Mother. At the time, Father worked part-time as a delivery driver and was using retirement savings to support himself. Mother was a director of finance at Hospice of Central PA. Mother also derived rental income from farmland, a barn, and a second home on her property. On October 5, 2022, the trial court entered an order directing Mother to pay Father $719 per month in child support.

Mother filed a demand for a de novo hearing, arguing that the trial court erroneously failed to assign an earning capacity to Father and incorrectly included rental income in calculating Mother's income. Mother also requested a vocational evaluation of Father. Subsequently, the trial court allowed Mother to hire a vocational expert at her own expense. On April 6, 2023, Terry Dailey ("Dailey"), a vocational expert with Leslie Vocational Consulting, conducted a vocational evaluation interview with Father and issued a report.

The trial court held a hearing on June 28, 2023, at which Mother, Dailey, and Father testified. Of relevance here, the trial court attributed to Father an earning capacity of $84,713.04 effective September 2, 2022, and $87,254.04 effective January 1, 2023, and attributed a net rental income to Mother of $3,324 per year. Ultimately, the trial court entered a support order directing Mother to pay child support to Father of $558 per month and $55 per month in arrears, effective September 2, 2022, and $461 per month and $46 per month in arrears, effective January 1, 2023. The trial court also ordered

Mother to pay 55% of unreimbursed medical expenses that exceed $250 per year. Father timely appealed the decision and filed a court-ordered Pa.R.A.P. 1925(b) concise statement.

Father raises the following questions for our review:

1. Whether the trial court erred by deducting expenses from [Mother's] rental income where those deductions were not supported by the record[?]

2. Whether the trial court erred in imputing to [Father] an earning capacity of $84,713.04 and $87,254.04 where that determination is directly contrary to the record and evidence presented at the hearing[?]

3. Whether the trial court erred in imputing an earning capacity to [Father] who would incur childcare expenses if he were employed, but failing to consider reasonable childcare responsibilities and expenses in the calculation of his support[?]

4. Whether the trial court erred in failing to consider the factors for deviation pursuant to Pa.R.C.P. Rule 1910.16-5 and accounting for Mother's proceeds from the sale of her land that she has sitting in a bank account[?]

Father's Brief at 7-8.

Our standard of review of a child support order is as follows:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

- 3 -

***Kimock v. Jones***, 47 A.3d 850, 854 (Pa. Super. 2012) (citation omitted).

In his first issue, Father contends that the trial court abused its discretion in calculating Mother's rental income. Father's Brief at 17. According to Father, the trial court improperly deducted expenses from Mother's rental income. ***Id.*** Father notes that expenses from rental income is not included in the list of deductions permitted in the calculation of net income under Pa.R.C.P. 1910.16-2(c).[1] ***Id.*** at 18. Noting that Mother has rental income of $15,720, Father asserts that Mother introduced a list of deductions on her tax returns but did not identify the expenses relating to each specific portion of her rental property, and the trial court failed to identify the deductions it was allowing on the rental income. ***Id.*** at 19-20, 21. Father further claims that a party may take only deductions listed in Rule 1910.16-

_____

[1] Rule 1910.16-2(c), which addresses a party's monthly net income, provides:

> (1)  Unless these rules provide otherwise, the trier-of-fact shall deduct only the following items from monthly gross income to arrive at monthly net income:
>
> > (i)  federal, state, and local income taxes;
> > (ii)  unemployment compensation taxes and Local Services Taxes (LST);
> > (iii)  F.I.C.A. payments (Social Security, Medicare and Self-Employment taxes) and non-voluntary retirement payments;
> > (iv)  mandatory union dues; and
> > (v)  alimony paid to the other party.

Pa.R.C.P. 1910.16-2(c).

2(c) to calculate net monthly income, and Mother's deductions were not permitted under this rule. *Id.* at 20-21. Father seeks for the entire amount of rental income be included in calculating Mother's income and child support obligation. *Id.* at 21.

Father did not raise this issue in his court-ordered Rule 1925(b) concise statement. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). To the contrary, it appears Father raised this claim in response to the trial court's vague reference in its Pa.R.A.P. 1925(a) opinion to its calculation of Mother's rental income. Specifically, it stated:

> The only other income for [Mother] of which the [trial c]ourt was made aware was her $15,720 per year in gross rental income. [Mother] showed a loss for the 2022 tax year of $1,264. … The trial court disallowed some of the deductions and apportioned some others between the [] sub parcels resulting in a net income of $3,324 per year or $277 per month.

Trial Court Opinion, 9/20/2023, ¶ 2.[2]

Although Father's brief correctly states that the trial court failed to specify how it reached its decision regarding Mother's rental income, his failure to explicitly raise this issue in his Rule 1925(b) concise statement hampered the trial court's ability to author an opinion meaningfully analyzing his claim

---

[2] The trial court included this statement in response to Father's allegation of error that "[t]he Honorable Trial Court erred as a matter of law and/or abused its discretion in failing to include all sources of income in calculating [Mother's] total gross monthly income." Father's Rule 1925(b) Concise Statement, 8/28/2023, at ¶ 2.

of error in this regard. *See Tucker v. R.M. Tours*, 939 A.2d 343, 347 (Pa. Super. 2007) ("The purpose of Pa.R.A.P. 1925(b) is to aid appellate review by providing a trial court the opportunity to focus its opinion upon only those issues that the appellant plans to raise on appeal, and guarantees predictable consequences for failure to comply with the rule.") (brackets and citation omitted). Because Father failed to raise this issue in his concise statement, we are constrained to find it waived on appeal.[3] *See Korman Commer. Props. v. Furniture.com, LLC*, 81 A.3d 97, 102 (Pa. Super. 2013) (determining that appellant had waived its issue on appeal by failing to raise it in the concise statement).

In his second issue, Father contends that the trial court erroneously attributed him an earning capacity of $84,713.04 effective September 2, 2022, and $87,254.04 effective January 1, 2023, despite the absence of

_____

[3] We note that this Court has held that courts may consider certain rental expenses when calculating a party's income for support purposes. *See, e.g., Sirio v. Sirio*, 951 A.2d 1188, 1202 (Pa. Super. 2008) (concluding that the record supports the finding that the rental income was offset by the expenses associated with the rental property); *Com. ex rel. Hagerty v. Eyster*, 429 A.2d 665, 668 (Pa. Super. 1981) (stating that in calculating rental income, the income must establish the actual available financial resources, i.e., cash flow). Although the trial court's 1925(a) opinion states that it allowed some, but not all, deductions to Mother's rental income, neither the opinion nor the record indicates the deductions permitted or the manner of apportionment of such deductions to the rented portions of Mother's property. Without this information, or argument by Father as to which of the deductions, if any, should have been disallowed, we are unable to review this claim on appeal.

evidence supporting such figures. Father's Brief at 22-23. Father notes that he lost his job in 2018 and that he has been using earnings from a part-time job and retirement savings to support himself. *Id.* at 23-24, 25. Father argues that the trial court should not have utilized his prior income plus a cost-of-living increase in calculating his earning capacity, claiming that he had conducted extensive job searches that did not result in his fulltime employment. *Id.* at 25. Father asserts that the trial court improperly disregarded evidence of his lower earning capacity, including testimony from Mother's vocational expert, Dailey, who gave him an earning capacity of $72,820 per year, and his own recommendation of an earning capacity of $54,000 per year. *Id.* at 24, 26. Father claims Mother's child support obligation should be recalculated providing him with a lower earning capacity. *Id.* at 27.

Pennsylvania Rule of Civil Procedure 1910.16–2(d)(4), addressing earning capacity, provides as follows:

> (i) When a party willfully fails to obtain or maintain appropriate employment, the trier-of-fact may impute to the party an income equal to the party's earning capacity.
>
> (A) Earning Capacity Limitation. The trier-of-fact:
>
> (I) shall not impute to the party an earning capacity that exceeds the amount the party could earn from one full-time position; and
>
> (II) shall determine a reasonable work regimen based upon the party's relevant circumstances, including the jobs available within a particular occupation, working hours and conditions, and whether a party

has exerted substantial good faith efforts to find employment.

(B)    The trier-of-fact shall base the party's earning capacity on the subdivision (d)(4)(ii) factors.

(C)    After assessing a party's earning capacity, the trier-of-fact shall state the reasons for the assessment in writing or on the record.

(D)    When the trier-of-fact imputes an earning capacity to a party who would incur childcare expenses if the party were employed, the trier-of-fact shall consider reasonable childcare responsibilities and expenses.

(ii)    Factors. In determining a party's earning capacity, the trier-of-fact shall consider the party's:

(A)    child care responsibilities and expenses;
(B)    assets;
(C)    residence;
(D)    employment and earnings history;
(E)    job skills;
(F)    educational attainment;
(G)    literacy;
(H)    age;
(I)    health;
(J)    criminal record and other employment barriers;
(K)    record of seeking work;
(L)    local job market, including the availability of employers who are willing to hire the party;
(M)    local community prevailing earnings level; and
(N)    other relevant factors.

Pa.R.C.P. 1910.16-2(d)(4).

At the hearing, Father stated that he supported himself with a part-time job as a delivery driver and his retirement savings. N.T., 6/28/2023, at 81, 85, 90-91. Father noted that his previous jobs were with Harris Corporation, where he worked as a radio frequency technician and a land mobile radio

provisioning administrator, which amounted to technical data entry. *Id.* at 86. Father testified that he earned approximately $83,000 at Harris Corporation but lost his job in 2018 because his position could be filled by a lower earning employee. *Id.* at 86, 87-88; *but see id.* at 34 (Mother's testimony that Father was fired because he was badmouthing the owners to a coworker, who told the owners about Father's statements). Father acknowledged that he could still secure a fulltime job, and that although he was looking for such a job, he had been unable to find one. *Id.* at 89-90, 91. He admitted, however, that he had not applied for a job since June 2021. *Id.* at 116. Father further testified that he submitted to the vocational evaluation administered by Dailey but he took issue with her final report and salary calculations. *Id.* at 94-96. He asserted that the report assigned him a management job, which he has never had, and that Dailey assigned him higher salaried jobs than the salary matching his job qualifications. *Id.* at 96, 98, 104, 117. Although Father conceded that the "computer occupations," which had an average salary of $82,380, closely matched his prior job at Harris Corporation, *id.* at 103, he nonetheless testified that his review of Department of Labor data showed average salaries for his previous jobs that would support attributing to him an earning capacity of $54,000. *Id.* at 106.

Dailey testified that she conducted the vocational evaluation of Father and produced a report. *See id.* at 37. She reviewed Father's transferable skills, education, age, and prior work experience, as well as the occupational

titles listed with the Department of Labor in the area where Father lives. *Id.* at 48, 60-62, 72, 74. Dailey opined that jobs matching Father's experience include an administrator or radio operator, which had an average salary of $120,720; an administrative data entry position, with an average salary of $60,730; a sales representative, which had an average salary of $72,690; and a delivery driver, which had an average salary of $37,140. *Id.* at 48-49, 66, 70; *see also* Vocational Report, 4/27/2023, at 5. The average salary for these positions was $72,820. N.T., 6/28/2023, at 69, 73, 76; *see also* Vocational Report, 4/27/2023, at 5. Dailey determined, however, that Father was overqualified to be a delivery driver and removed that earnings calculation from her average salary determination. N.T., 6/28/2023, at 49-50. She concluded that the average remaining salaries provided Father with an earning capacity of $84,713. *Id.* at 50. Dailey maintained that there was "no question" Father could earn this kind of money and that older, experienced workers were in high demand because of their loyalty and consistency. *Id.*

The trial court found Father's testimony as to the reason he was terminated from Harris Corporation to be incredible, finding instead that Mother credibly testified that Father was fired because of negative comments he made about the company's owners. Trial Court Opinion, 9/20/2023, ¶¶ 3-4. It is well settled that it is entirely within the purview of the trial court to weigh the evidence and decide credibility, and this Court will not reverse those

determinations so long as they are supported by the evidence. ***Brubaker v. Brubaker***, 201 A.3d 180, 184 (Pa. Super. 2018).

Furthermore, the trial court did not rely upon Dailey's testimony in calculating Father's earning capacity. Instead, it found that Father did not make any effort to find new employment for the two years prior to the hearing and calculated his earning capacity by extrapolating the money he would have earned if he had stayed at Harris Corporation plus a cost-of-living increase. Trial Court Opinion, 9/20/2023, ¶¶ 3-4.

Our review of the record finds no abuse of discretion. "When a party willfully fails to obtain or maintain appropriate employment, the trier-of-fact may impute to the party an income equal to the party's earning capacity." Pa.R.C.P. 1910.16-2(d)(4)(i). "The trier-of-fact shall not downwardly adjust a party's net income if the trier-of-fact finds that ... the party voluntarily assumed a lower paying job, quit a job, left employment, changed occupations, changed employment status to pursue an education, or employment is terminated due to willful misconduct." Pa.R.C.P. 1910.16-2(d)(1)(ii).

After the Harris Corporation terminated Father's employment, he used retirement savings and a part-time job as a delivery driver to support himself. Father conceded that he could work a fulltime job but failed to establish the steps he took to obtain such employment. Indeed, Father acknowledged that he had not applied for fulltime employment since June 2021. Notably,

although the trial court did not rely upon Dailey's report in imputing Father's earning capacity, her findings support the trial court's conclusion, as Dailey found Father's average earning capacity to be $84,713 based upon the jobs for which he was qualified in the area where he lived. *See* N.T., 6/28/2023, at 50. Moreover, Father's own testimony supports the trial court's calculation, as he admitted that "computer occupations," which provided an average salary of $82,380, closely matched his prior job at Harris Corporation. *Id.* at 103.

The record supports the trial court's conclusion, and we decline Father's invitation to reweigh the evidence presented at the hearing. *See Brubaker*, 201 A.3d at 184. We therefore discern no abuse of discretion in the evidence the trial court considered to determine Father's earning capacity.

In his third issue, Father contends that the trial court should have included his childcare expenses in calculating his earning capacity. Father's Brief at 27, 28-29. Father argues that Rule 1910.16-2(d)(4)(D) required the trial court to adjust his earning capacity based upon the reasonable childcare expenses he will incur. *Id.* at 27. Father maintains that if he returned to fulltime employment, he would need childcare assistance. *Id.* at 27, 28-29. Father observes that he drives L.W. to school from his home and the travel time is approximately forty minutes each way. *Id.* at 27-28. He asserts that if he worked fulltime, he would have to hire a nanny to transport L.W. to and

from school at a cost of approximately $1650 per month, a cost that should have been included in calculating his earning capacity. *Id.* at 28, 29-30.

Contrary to Father's claim, this Court has held that Rule 1910.16–2(d)(4) does not require a trial court to "adjust the earning capacity to reflect the … childcare responsibilities of the party to which the earning capacity is being assigned;" rather, the court must only "consider" this factor. *Morgan v. Morgan*, 99 A.3d 554, 558 (Pa. Super. 2014) (citation and quotation marks omitted). Here, the trial court did consider Father's potential childcare costs when determining his earning capacity. *See* Trial Court Opinion, 9/20/2023, ¶¶ 5, 6. The trial court credited Mother's testimony that her family could help Father with childcare needs and that Father dismissed Mother's offer to help. *See id.*; *accord* N.T., 6/28/2023, at 17. The trial court made no adjustment to Father's earning capacity because of the lack of evidence as to the frequency of or need for childcare. *See* Trial Court Opinion, 9/20/2023, ¶ 6.

The trial court considered childcare costs, and based on its credibility determinations, found that no reduction in Father's earning capacity was warranted. As the trial court's factual findings and credibility determinations are supported by the record, we find no abuse of discretion in its calculation of Father's earning capacity. *See Morgan*, 99 A.3d at 559; *Brubaker*, 201 A.3d at 184.

In his final issue, Father contends that the trial court did not properly calculate Mother's monthly net income. Father's Brief at 30, 32-33. Father

argues that Mother sold an 18-acre plot of land in 2022 and realized $190,000 from the sale of the land. *Id.* at 32. Father asserts that the trial court should have considered this as income in determining Mother's child support obligation. *Id.* at 33-34.

At the hearing, Mother testified that she sold the land in question in January 2022, and stated that a portion of the sale proceeds was used to purchase new property and that the rest, approximately $90,000, was placed in her bank account. N.T., 6/28/2023, at 22, 24. Father's counsel acknowledged that the property in question was a marital asset that Mother received in equitable distribution as part of the marital settlement agreement, but nonetheless argued that the money received from the sale of the property was income for child support purposes. *Id.* at 23.

The law is clear that "marital property subject to equitable distribution may not be included in an individual's income for purposes of calculating support payments, and [we] have characterized this practice as 'double dipping.'" *Conner v. Conner*, 217 A.3d 301, 317-18 (Pa. Super. 2019). Likewise, "Money received from the sale of an asset awarded in equitable distribution may not be included in an individual's income for purposes of calculating support payments." *Miller v. Miller*, 783 A.2d 832, 835 (Pa. Super. 2001).

On appeal, Father does not dispute the property in question was marital property provided to Mother as part of the equitable distribution of assets

between the parties following their divorce. Therefore, neither the value of the property nor money received from its sale may be included in the calculation of Mother's income. **See Conner**, 217 A.3d at 317-18.[4] Thus, the trial court did not abuse its discretion in declining to include the money received from the sale of the property in question when calculating her income.

In light of the foregoing, we affirm the trial court's order directing Mother to pay Father $558 per month and $55 per month of arrears, effective September 2, 2022, and $461 per month and $46 per month of arrears, effective January 1, 2023.

Order affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/7/2024

_____

[4] We note that "[t]he single caveat to this rule is that any gain realized in the sale of the asset may, indeed must, be included in the calculation of income." **Miller**, 783 A.2d at 835. Father, however, does not argue, and has not cited any evidence to suggest, that Mother realized a gain from the sale of the property.