J-A13006-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| LINDSAY M. WHOLAVER | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANKLIN T. WHOLAVER, JR. | : | |
| | : | |
| Appellant | : | No. 1356 WDA 2024 |

Appeal from the Decree Entered October 2, 2024
In the Court of Common Pleas of Clearfield County Civil Division at
No(s): 2020-414-CD

BEFORE: BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED: August 13, 2025**

Franklin T. Wholaver, Jr. ("Husband") appeals from the divorce decree entered October 2, 2024, challenging the December 8, 2023 orders rendered final thereby that resolved the economic claims filed by Lindsay M. Wholaver ("Wife"). We vacate and remand for further proceedings consistent with this memorandum.

Given our disposition, we provide an abridged factual recitation taken from the report of the divorce master and the evidence cited therein.[1]

---

[1] As for the background, our review of the case histories offered by the parties in their briefs compels us to note that our rules specify that the statement of the case shall contain, *inter alia*, "[a] closely condensed chronological statement, in narrative form, of all the facts which are necessary to be known in order to determine the points in controversy, with an appropriate reference in each instance to the place in the record where the evidence substantiating

*(Footnote Continued Next Page)*

Husband and Wife married in February 2008. They have three minor children who, at the time of the hearings discussed in this appeal, were in Wife's primary physical custody. During the marriage, Husband was the main breadwinner after he completed his undergraduate education, ultimately earning a masters in business administration. In addition to his salary and benefits from employment as a manager with a manufacturing company, Husband pursued earning additional income from online sales of t-shirts and video games, as well as through investments in stocks, options, and cryptocurrency. Wife's principal occupation was as a homemaker, with some income earned from time to time through breeding Siberian huskies and working as an exotic dancer. Wife assisted Husband with the online sales, but generally did not participate in managing the family's finances. The parties enjoyed a typical middle class lifestyle, but acquired debt to maintain it.

The parties separated in July 2019, and Wife filed for divorce in March 2020, seeking equitable distribution, alimony, and attorney fees. In April

---

the fact relied on may be found." Pa.R.A.P. 2117(a)(4). **All argument is to be excluded from the statement**: "The statement of the case shall not contain any argument. It is the responsibility of appellant to present in the statement of the case a balanced presentation of the history of the proceedings and the respective contentions of the parties." Pa.R.A.P. 2117(b). Here, Husband's statement of the case is patently biased and argumentative, and also contains extraneous information, in great detail, not pertinent to any issues he raises. Wife's brief contains an optional counterstatement of the case which likewise injects advocacy into the narrative. We admonish counsel for both parties to follow the rules and save advocacy for the argument section of a brief.

2021, the trial court appointed a divorce master who held hearings on June and July 2022. At that time, Husband's monthly net income was roughly $7,200, while Wife took home less than $1,200 per month from her part-time job as a sales associate. Additionally, Wife was awarded alimony *pendente lite* of approximately $1,460 per month.

The parties stipulated to the values of many of the marital assets, such as a handful of bank accounts totaling approximately $3,000, as well as their considerable liabilities, which included a mortgage on the marital residence and vehicle loans that were close to or in excess of the value of the collateral, and over $100,000 in other loans and credit card debt.[2] The largest assets of stipulated value were Husband's 401(k) retirement plan with a value of just over $24,000 at the date of separation, and the inventory for online sales through fulfillment by Amazon ("FBA") stipulated to be worth slightly more than $10,000.

The main areas of contention related to several financial accounts that Husband managed post-separation: a Robinhood stock account, the FBA accounts for the online sales, and a Voyager cryptocurrency trading account

---

[2] The stipulated value of the home was $106,000, while the outstanding balance on the mortgage was $111,880.33. One of the two vehicles purchased during the marriage was worth approximately $3,000 more than was owed on it, while the other was valued at $2,000 with a nearly $4,000 loan balance.

- 3 -

that Husband opened in 2021.  The master summarized Husband's position

and evidence on these matters as follows:

> Husband argues that the appropriate valuation for the Robinhood stock account is $350.48.  In support of his position, Husband submitted Defendant's Exhibit 5, a Robinhood statement identified for the period of July 1, 2019 through July 31, 2019 that identifies the total securities as $350.48.  Husband testified that the Robinhood account, similar to his 401(k), Voyager account, and any other stock account, decreased in value due to market experience.

> Moreover, Husband admitted into evidence Defendant's Exhibit 14, which he identified as deposits and withdrawals into his Robinhood account.  The last page of Defendant's Exhibit 14 was identified as a summary of the deposits and withdrawals Husband made to various accounts.  Specifically, the last page of Defendant's Exhibit 14 purportedly shows deposits and withdrawals regarding his 401(k), his Robinhood account, his Voyager account, and his Amazon FBA.  Husband testified that the summary was to evidence his movement of funds from one account to the others to keep his investments level, to adjust for reductions in stock, and to create a diversified portfolio.

> Husband also entered into evidence Defendant's Exhibit 46, a later Robinhood statement with an updated timeframe of June 30, 2022. Said exhibit identified the value of the Robinhood account as $12,093.01.

Master's Report, 1/12/23, at 26-27 (cleaned up).

Meanwhile, Wife proposed a valuation of the Robinhood account of

$24,814.83, supported by a tax document from February 2020.  *Id*. at 27

(citing Plaintiff's Exhibit F).  She contended that Husband's proposed valuation

was lower not because of poor stock market performance, but because

Husband unilaterally withdrew funds.  *Id*.  She further argues that Husband's

commingling of any separate assets with marital assets in the financial

accounts post-separation rendered the whole amount marital property subject to equitable distribution. *Id*. (citing *Verholek v. Verholek*, 741 A.2d 792, 797 (Pa.Super. 1999) ("[O]nce non-marital property is combined and comingled with marital property, it loses its identity as non-marital property and takes on the status of marital property.")).

Wife additionally asserted that the summary of post-separation deposits and withdrawals at the end of Husband's Exhibit 14 established "that Husband made significant unilateral withdrawals to the aforementioned accounts." *Id*. The master explained:

> Specifically, she argues that Defendant's Exhibit 14 evidences withdrawals in the following amounts: $44,300.00 from Husband's Robinhood account; $13,500.00 from Husband's Voyager account; $62,344.01 from Husband's Amazon FBA inventory, and $46,814.32 from Husband's 401(k). In total, Wife argues that Husband withdrew approximately $144,139.33 from marital assets and, as such, the same should be reflected on the schedules for equitable distribution. Husband disputes this claim, arguing that the movement of funds from one account to the others to keep his investments level as discussed above, and that the market, not his disreputable actions, are to blame for the reduction in value.

*Id*. at 27-28.

Ultimately, the master recommended that the marital assets be divided 60%-40% in favor of Wife, with the exception of the marital residence, suggesting an even 50% split of any sale proceeds or remaining debt. The master valued the Robinhood account at $350.48, the FBA account at $10,402.33, and the 401(k) at $24,133.53. *Id*. at Schedule A. The master further found in Wife's favor on the issue of Husband's alleged depletion of the

financial accounts he managed, including the post-separation Voyager account, reasoning that any non-marital property commingled therein "lost its identity and took on the status of marital property." *Id*. at 28.  Accordingly, the master listed an additional $142,824.80 in the marital estate, arrived at by totaling all withdrawals Husband made from the accounts without regard to the origin of the funds or where they went afterwards.  The master also recommended that Husband pay Wife alimony for a maximum of five years, and that he reimburse her for 60% of her attorney fees.

Husband filed twenty-six exceptions to the master's report.  Among his grievances were claims that neither alimony nor attorney fee awards were warranted, that the Voyager account was not a marital asset, and that the $140,000 asset was "a fiction and d[id] not exist."  Husband's Exceptions, 2/1/23, at ¶ 3.  The trial court entertained argument on the exceptions in November 2023.  At that proceeding, Husband walked the court through many of the exhibits proffered at the master's hearing, highlighting the cost bases for investments, the net losses that the investments realized, and explaining how the valuation method utilized by the master in effect fabricated assets by counting the same dollars multifold.[3]  *See* N.T. Hearing, 11/7/23, at 52-61.

_____

[3] Husband's argument on this latter point was as follows:

> Your Honor, the $142,000 is a fiction.  That money doesn't actually
> exist.  It's not a withdrawal.  It is not a multiple of monies coming
> out into [Husband]'s pocket.  What that money is is it is money

*(Footnote Continued Next Page)*

In two orders entered on December 8, 2023, the court dismissed Husband's exceptions, adopted the master's findings, and directed the recommended distribution. The inclusion of the aforementioned $142,000 as a marital asset resulted in a total asset value of $217,371 and debt amount of $164,937.52, excluding the marital residence from both figures. Husband was ordered to receive $210,871 of the assets, the bulk of which was the withdrawal sum, along with $125,815.14 of the debt, requiring him to pay Wife $64,082.47.

Husband filed an appeal which this Court quashed because the orders in question had not been finalized by the entry of a divorce decree. The instant timely appeal followed the entry of said decree. The trial court ordered Husband to file a concise statement of errors complained of on appeal

---

that was withdrawn, re-invested, withdrawn, re-invested, and so on and so forth, until the amount of the withdrawals was over $142,000.

Your Honor, if I have a dollar and I put it into my saving account and I put it in and take it out 142,000 times, I don't have $142,000. I have one dollar, but it shows up as $142,000 in withdrawals. What we're doing here by saying it's [$]142,000 in withdrawals is we're ignoring the fact that this money was re-invested elsewhere. It was taken and put back in to investments, put back into investment apps such as Robin Hood, Voyager. It was part of the Amazon withdrawals. So that $150,000 [*sic*] took into account monies that were being paid for his business, but also being taken out for expenses.

N.T. Hearing, 11/7/23, at 52-53.

pursuant to Pa.R.A.P. 1925(b), and he timely complied.[4] The trial court submitted a letter to this Court indicating that no Rule 1925(a) opinion would be forthcoming.

Husband presents the following questions for our resolution:

A.  Did the trial court commit an error of law and abused [*sic*] its discretion by misapplying the law as to the valuation of the marital estate where the trial court included a fictitious asset in the marital asset[s]?

B.  Did the trial court abuse its discretion and commit errors of law in awarding alimony to [Wife] where [she] failed to demonstrate actual need for alimony?

C.  Did the trial court abuse its discretion and commit errors of law by awarding a counsel fees award to [Wife]?

Husband's brief at 11 (cleaned up).

We begin with an examination of the legal principles applicable to Husband's valuation issue:

Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.

Additionally[, i]n determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

_____

[4] We remind the court that its Rule 1925(b) orders must include all of the items specified in subsection (b)(3), including "the address to which the appellant can mail the Statement," and, more significantly, "that any issue not properly included in the Statement timely filed and served pursuant to subdivision (b) shall be deemed waived." Pa.R.A.P. 1925(b)(3)(iii), (iv).

> Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

**Martin v. Martin**, 320 A.3d 113, 120 (Pa.Super. 2024) (cleaned up).

Marital property subject to equitable distribution "includes all property acquired by either party during the marriage and any property acquired after separation until the date of divorce if that property is acquired in exchange for marital assets." **Fishman v. Fishman**, 805 A.2d 576, 578 (Pa.Super. 2002) (cleaned up). Assets earned or acquired after separation are otherwise excluded from the marital estate. **See** 23 Pa.C.S. § 3501(a)(4). "[W]hen a party commingles non-marital assets with marital assets, those assets generally are transformed into marital assets." **Dean v. Dean**, 98 A.3d 637, 641 (Pa.Super. 2014) (citing **Verholek**, 741 A.2d at 797). This typically occurs when "**pre-marital** funds cannot be traced due to the commingling with marital funds[.]" **Busse v. Busse**, 921 A.2d 1248, 1257 (Pa.Super. 2007) (emphasis added). However, where the separate contribution or property of one spouse can be distinguished from the marital value thereof, the entire asset need not be deemed marital. **See Dean**, 98 A.3d at 641–42.

As for ascribing monetary values to marital property, we have observed: "The Divorce Code does not specify an asset valuation method, and therefore

the trial court must rely on its own discretion. The trial court may accept all, part, or none of the evidence regarding valuation of marital property, and it may rely on its own valuation method." *Brubaker v. Brubaker*, 201 A.3d 180, 185 (Pa.Super. 2018) (cleaned up). Nonetheless, the exercise of discretion must be informed by the evidence of record, including "estimates, inventories, records of purchase prices, and appraisals submitted by the parties." *Verholek*, 741 A.2d at 796. Stated differently, the valuation cannot be "impermissibly speculative." *Fisher v. Fisher*, 769 A.2d 1165, 1169 (Pa. 2001). Further, "it is beyond peradventure that the chosen methodology must represent an accounting of the asset's total value." *Mundy v. Mundy*, 151 A.3d 230, 237 (Pa.Super. 2016).

In deciding the appropriate date of the valuation, "the trial court must choose a date which best works economic justice between the parties." *Brubaker*, 201 A.3d at 185. The preferred valuation date is the date of distribution rather than the date of separation. *See*, *e.g.*, *Busse*, 921 A.2d at 1260. However, "[i]t is sometimes more appropriate to use the separation date, . . . such as where one spouse consumes or disposes of marital assets." *Id*. Where an asset is susceptible to significant fluctuation, "the date selected is generally close to the date of distribution, rather than the date of separation." *Brubaker*, 201 A.3d at 185 (cleaned up). On the other hand, where a change of value is to one spouse's exclusive control over an asset such as a family business, then a deviation to valuation as of the date of

- 10 -

separation may be warranted. *See Benson v. Benson*, 624 A.2d 644, 646 (Pa.Super. 1993).

In the case *sub judice*, Husband argues that if the trial court had independently reviewed the master's report and the evidence upon which it was founded, it would have been forced to conclude that the finding that Husband appropriated over $140,000 in marital funds was devoid of record support. *See* Husband's brief at 34-35. He maintains that he produced complete records for all of the implicated accounts, and that these documents and his explanatory testimony established not his removal of marital assets from the accounts, but that the money was "re-invested over and over again." *Id*. at 35. He claims that the conclusions of the master and court cannot be correct, as he could not have withdrawn more from the funds than the marital values ascribed to them:

> [T]he parties stipulated Husband's 401(k) had a marital value of $24,133. It would, therefore, be impossible for Husband to withdraw $46,814.32 of marital funds from his 401(k) post-separation. The trial court determined the marital value of Husband's Amazon FBA inventory was $10,402.33. Therefore, Husband could not have withdrawn $62,344.01 of marital funds from this account post-separation. The trial court determined the marital value of Husband's Robinhood Stock Account was $350.48. It would be impossible for Husband to withdraw $44,300 of marital funds from his Robinhood Stock Account. Husband's Voyager Account was established after the parties' separation. It is a fallacy for the trial court to determine Husband withdrew $13,500 of marital funds from his Voyager account after the parties' separation.

*Id*. at 35-36 (cleaned up). Husband asserts that he provided clear evidence of the values of the assets and documentation of the investments, and that a

proper valuation must be ordered "which shall not include duplicative, reinvested separate assets of Husband which were never proven by Wife to constitute marital assets in the first instance." *Id*. at 37-38.

To the extent that Husband suggests that funds deposited into accounts post-separation cannot be deemed marital assets, he is plainly incorrect. As noted above, marital property includes not only assets acquired during the marriage, but also assets acquired between separation and divorce using marital assets. *See Fishman*, 805 A.2d at 578. Thus, insofar as any post-separation deposits or other increases in the values of the Robinhood, FBA, or Voyager accounts is attributable to the liquidation or appreciation of pre-separation assets, it matters not that Husband moved the funds after the parties separated. If an investment of marital funds earned interest or otherwise increased in value between separation and divorce due to favorable market conditions, the valuation of the asset for purposes of equitable distribution would not be its worth at separation, but the greater amount.[5]

However, nothing in the certified record suggests that these investments of marital assets had a net growth in value between the time the parties separated in 2019 and the time of the master's hearing in 2022. Thus, to the extent that Husband complains that the record does not support the

---

[5] In this vein, Husband conceded at the hearing on his exceptions that post-separation a net gain of $8,000 on certain investments should be included in the marital estate. *See* N.T. Hearing, 11/7/23, at 55.

finding that he depleted the marital value of the accounts by over $140,000, we are constrained to agree.

The master concurred with Husband that the Robinhood account had a marital value of $350.48. However, the master found Wife's argument that Husband's movement of funds among the marital accounts and his after-established Voyager account amounted to commingling such that "any funds that were transferred between Husband's Robinhood accounts, Voyager accounts, Amazon FBA accounts, and 401(k) were sufficiently comingled to warrant each being identified as a marital asset." Master's Report, 1/12/23, at 28. The master continued:

> [A]s the record did not include any specificity regarding the movement of funds, the Master does not have sufficient information to properly identify which withdrawals were subsequently deposited into another account. It is possible that a portion of the withdrawals, even possibly all of the withdrawals, were accounted for by deposits in some other account. However, the record does not make this clear, and the Master would be forced to speculate as to which funds were transferred to which accounts. As this speculation would lack any legal basis, the Master must, in equity, determine that any withdrawal from the aforementioned accounts must be considered a withdrawal of marital property.

*Id*. at 28-29. The master therefore found that the sum of all the withdrawals listed by Husband in his Exhibit 14 for each of those accounts, namely

- 13 -

$142,824.80, would be considered a marital asset consumed by Husband.[6]

*Id*. at 29.

It was not an abuse of discretion for the trial court to adopt the master's suggestion that, in the absence of any clear accounting from Husband detailing the destination of each withdrawal, it would decline to speculate how much of each withdrawal was reinvested into one of the accounts at issue. Yet, it was equally speculative to ignore all the post-separation deposits into those accounts or to assume that they were sourced from marital assets.[7]

_____

[6] The summary in Exhibit 14 is as follows:

| | Deposits | Withdrawls | Investment | | 401k Withdrawl | Amount | |
|---|---|---|---|---|---|---|---|
| Robinhood | 98,300.00 | (44,300.00) | 54,000.00 | | 12/30/20 | 46,814.32 | withdrawl |
| Voyager | 18,500.00 | (13,500.00) | 5,000.00 | | 3/16/22 | 7,269.98 | loan |
| Amazon FBA | 63,224.96 | (62,344.01) | 880.95 | | | | |

The master arrived at the value of $142,824.80 by totaling the withdrawals:

> $44,300.00 from Husband's Robinhood account; $13,500.00 from Husband's Voyager account; and $62,344.01 from Husband's Amazon FBA inventory. Additionally, the master added the sum of $22,680.79, which is the difference when subtracting the total withdrawal from Husband's 401(k), identified as $46,814.32, from the stipulated value of the 401(k), which was $24,133.53.

Master's Report, 1/12/23, at 28

[7] Notably, the value of a marital asset that remained in Wife's possession post-separation, namely her collection of Siberian huskies, was similarly speculative but received different treatment. Husband opined that they were worth $12,000, but the master found no concrete evidence in the record to substantiate that number. Rather than adopting the proffered valuation, the master listed it "as an asset of Wife with an unknown valuation." Master's Report, 1/12/23, at 31.

In addition to the spreadsheet compiling the overall investments and withdrawals, Husband's Exhibit 14 included a full account history for the Robinhood account from January 2018 to April 2022. Most transactions are deposits from or withdrawals sent to two bank accounts in amounts of under $5,000. A few outliers include a deposit of $46,000 Husband made in January 2021 of funds he withdrew from his 401(k), and $18,000 in April 2022 from a credit union account. In questioning Husband about these transactions, Wife focused on where withdrawals went as opposed to the source of the deposits. *See*, *e.g.*, N.T. Hearing, 7/15/22, at 321-24.

Wife, the master, and the court wholly overlooked Husband's $98,300 post-separation investments in the Robinhood account and concentrated upon the $44,300 he withdrew in 2020 and 2021. Likewise, the master's finding, adopted by the trial court, indicates that Husband realized the entire benefit of $62,000 that he withdrew from the FBA account, neglecting to acknowledge that he invested $63,000 into inventory and other expenses for the online sales business. *See* N.T. Hearing, 7/15/22, at Defendant's Exhibit 14.

At bottom, the valuation adopted by the trial court at Wife's urging disregards the cost bases of the investments in question and thereby supposes assets not proven to exist.[8] *Accord Tocco v. Tocco*, 567 A.2d 303, 306

---

[8] As Husband highlighted during the argument on his exceptions, for example, his 2021 tax return evinced a net loss on his investments, mostly due to a large loss on stock options. *See* N.T. Hearing, 11/7/23, at 55.

(Pa.Super. 1989), *appeal granted on other grounds and aff'd*, 590 A.2d 1255 (Pa. 1991) (holding the increase in value of securities during the marriage that were purported to be marital property was "illusory" where the capital gains were never realized and the securities ultimately sold below the value they had at the time of marriage or separation such that there was no existing asset to equitably distribute).

Simply put, nothing in the record supports a finding that there was over $140,000 of marital assets removed from the investment portfolio and used by Husband for his personal benefit. Rather, the certified record indicates that the parties struggled to make ends meet both before and after separation, leaving a marital estate with a net negative value. While the evidence reflected some newly-earned money added to Husband's 401(k) in the form of post-separation contributions by Husband and his employer, the cumulative total of the withdrawals can only be explained by Husband's shuffling of funds from one investment to another. Charging Husband with appropriating the $46,000 he withdrew from his 401(k) and deposited into the Robinhood account, for example, while also holding him responsible for removing $44,000 from the Robinhood account amounts to fabricating value from thin air by double-counting the same asset.

Therefore, we conclude that the trial court abused its discretion in denying Husband's exceptions to the inclusion of the sum of the withdrawals

as a marital asset and ordering the equitable distribution of non-existent property.

Before considering Husband's remaining issues concerning alimony and attorney fees, we observe that the master highlighted "that the inclusion of this marital asset was crucial to the rest of the [m]aster's redistribution scheme." Master's Report, 1/12/23, at 29. He suggested that if the $140,000 number changed significantly, "this could dramatically impact the equity of the proposed scheme [such] that the distribution scheme in total should be re-examined." *Id*.

The master's concerns are borne out by the record. For example, using Wife's proposed findings, the net value of the marital estate was approximately $93,000 when the sum of the withdrawals was included. *See* Plaintiff's Proposed Findings, 8/29/22, at 26. Omitting these withdrawals as a marital asset, the net value of the estate, by Wife's reckoning, was nearly $51,000 in the negative.[9]

Furthermore, the resources available to a party from the equitable distribution of marital property impacts both the propriety and amount of awards of alimony and attorney fees. *See* 23 Pa.C.S. § 3701(b)(16) (listing as a consideration for "determining whether alimony is necessary and in

---

[9] Husband suggested that the net value of the marital estate was more than $91,000 in the negative. *See* Defendant's Proposed Findings, 8/29/22, at IV.

determining the nature, amount, duration and manner of payment of alimony . . . [w]hether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs"); **Brubaker**, 201 A.3d at 191 (specifying that "the property received in equitable distribution" is a relevant factor in assessing a request for attorney fees).

As such, our rejection of the inclusion of the unproven $140,000 marital asset palpably upsets the entire scheme, including the alimony and attorney fee awards. Therefore, we vacate both of the trial court's December 8, 2023 orders in their entirety and remand for the court to adopt a valuation of the marital estate supported by the evidence that will inform the resolution of the parties' economic claims.[10]

December 8, 2023 orders vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

8/13/2025

---

[10] Since Husband does not challenge the propriety of the divorce decree that rendered the economic orders final, we have no cause to disturb the decree. With the divorce decree in place, the forthcoming equitable distribution order shall be final when entered.